# Exhibit A



# Fourth Amendment
# Refresher Training

**Office of the Principal Legal Advisor**

**Revised July 2025**

DHS-ICE-25-0213, 25-0481, 25-0956-A-000172

2025-ICLI-00065   172

REL0000222044





# The Scope of This Training

- This training provides an overview of Fourth Amendment law.

- At the end of this session, your local OPLA field location will address circuit-specific issues and highlight any differences with this training.



DHS-ICE-25-0213, 25-0481, 25-0956-A-000173

AMERICAN OVERSIGHT

REL0000222044

2025-ICLI-00065    173



# Impact of Fourth Amendment Violations on ICE Operations

- Fourth Amendment violations may result in:

  - Release of the target;

  - Suppression of evidence;

  - Termination of removal proceedings, or

  - Dismissal of criminal charges.

- Violations may also lead to:

  - Civil liability, *Giglio* impairment, and discipline, and

  - Adverse impact on public trust and negative media coverage.

3

2025-ICLI-00065    174

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000174



# Suppression of Evidence

- Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment—as well as "fruit of the poisonous tree"—is inadmissible.

- Although in the civil immigration context, the exclusionary rule is triggered only by "egregious violations," many courts have interpreted this standard very broadly.

- A Fourth Amendment violation could result in exclusion of your only evidence of alienage and removability, including the Record of Sworn Statement and Form I-213, Record of Deportable/Inadmissible Alien.

- It is important to document your encounters to counter Fourth Amendment violations claims. You may be called to testify in immigration court years later.



REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000175



# *Bivens* Liability

- A lawsuit may be filed against an *individual* officer or agent alleging that the officer or agent **knowingly** violated constitutional rights. If the lawsuit is successful, the officer or agent will be personally liable for any monetary judgment entered against the officer or agent. A court may also order punitive damages and attorney's fees.

- To succeed, the *Bivens* plaintiff must establish that the defendant acted under color of federal law and the defendant's actions or failure to act deprived the plaintiff of a clearly established constitutional right.


U.S. Immigration and Customs Enforcement

2025-ICLI-00065    176

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000176



# Qualified Immunity

- Qualified immunity is the type of legal immunity that shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. To determine whether qualified immunity applies, courts first decide whether there was a violation of a clearly-established right, then whether the conduct was objectively reasonable in light of clearly established law at the time of the incident.

- If you were following the law and the agency's policy, you will be provided DOJ representation.



REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000177



# *Giglio* Impairment

- When an officer testifies at a criminal trial, prior agency misconduct findings, discipline, or violations of policies and procedures by an officer that relate to credibility must be disclosed to the defense.

    - Such evidence may render you "*Giglio* impaired," meaning that your credibility will become an issue at every future hearing or trial where you testify.

    - A finding that you are *Giglio* impaired may lead to loss of promotion opportunities or even removal from the agency.

- Misconduct allegations (including constitutional violations) may be investigated by the Office of Professional Responsibility.



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    178

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000178

# Negative Media and Social Media Coverage



2025-ICLI-00065    179

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000179



# Negative Media Coverage and Social Media

## WARNING:

- Always assume anyone can record you *and* those recordings will end up on social media or in the press.

  - Always act professionally and courteously; targets and advocates want you to lose your cool.

- Prepare responses for members of the public prior to operations (*e.g.*, how to introduce yourself, alert management to engage Office of Public Affairs when needed).



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    180

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000180



# Self-Identification as an ICE Officer and Disruptive Protesters



2025-ICLI-00065    181

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000181



# Self-Identifying as an ICE Officer

8 C.F.R. § 287.8(c)(2)(iii) requires that, **at the time of the arrest**, the designated immigration officers, **as soon as it is practical and safe to do so**:

(A) Identify themselves as immigration officers who are authorized to execute an arrest, and

(B) State that the person is under arrest and provide the reason for the arrest.



11

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000182



# Officer's Identification Request

- While performing your immigration enforcement duties, you may be asked to identify yourself **prior to** an arrest.

  - If the request comes from someone you are engaging with, such as a resident of a home you are seeking consent to enter, you must identify yourself as an officer of your Department, Agency, or Directorate.

  - Your badge should be clearly displayed when making a stop for officer safety/liability.

  - If the request is made in a public place by someone **other than** the individual the officer is engaging with, there is no requirement for the officer to respond.

  - Even when declining information, be professional.



12

2025-ICLI-00065    183

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000183

13



# Disruptive Protestors

- Local police enforce state or local law violations by protestors.

- Nevertheless, when disruptors interfere with a lawful administrative arrest, ERO officers should first advise the disruptors that their action may constitute a violation of federal criminal statutes and seek to defuse the situation.

- Prior to using force when the efforts to defuse the situation are unsuccessful, ERO officers should assess if force to be used against the disruptor(s) consistent with the ICE Directive No. 19009.3, *ICE Firearms and Use of Force Policy* (May 26, 2023), and the DHS Policy Statement No. 044-05, *Department Policy on the Use of Force* (Feb. 6, 2023), or any successor policy.



U.S. Immigration
and Customs
Enforcement

13

2025-ICLI-00065    184

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000184

14



# Disruptive Protestors, Cont'd

- When dealing with protestors, ERO officers should consider whether the conduct of the disruptors is criminal in nature. When a protestor violates federal law - whether a felony or misdemeanor - ERO may invoke its general arrest authority under INA § 287(a)(5) or its delegated arrest authority under 19 U.S.C. § 1589a(3).

- Keep in mind that the local U.S. Attorney's Office (USAO) must be willing to accept these criminal cases for prosecution. ERO field offices are advised to consult, through OPLA field locations, the local USAO to determine the threshold requirements for accepting criminal cases involving disruptive protestors and uncooperative targets.



14

2025-ICLI-00065    185

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000185



# Disruptive Protestors, Cont'd

- The ERO officer who makes a criminal arrest must provide *Miranda* warnings before an interrogation, in a language the subject understands, with an acknowledgement from the subject that the warnings were in fact understood.

- The fact that a subject has been advised of his rights must be documented on appropriate forms and made part of the arrest record.

- After a criminal arrest, the arrestee must be brought before a judge "without unnecessary delay." ERO should immediately transport the arrestee to the U.S. Marshals Service before contacting the USAO to discuss prosecution.



15

2025-ICLI-00065    186

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000186



# Disruptive Protestors, Cont'd

- As federal law enforcement officers, ERO officers have no authority to enforce *state* criminal law.

- State laws on the peace officer's status and citizen's arrest vary. Therefore, ERO officers should never assume that they have the authority to enforce state criminal law as a peace officer or a citizen.

- Consult OPLA for guidance on your state's current law on the peace officer's status and citizen's arrest.



U.S. Immigration and Customs Enforcement

16



# Disruptive Protestors – Scenario 1

An individual who is not the target of an immigration enforcement action learns of an ICE arrest in progress, appears at the scene, and physically shoves an ERO officer performing his official duty.

**What legal options are available to the officer to address the disruptor's conduct?**



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    188

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000188



# Disruptive Protestors – Scenario 2

A group learns of an administrative immigration arrest by ICE in progress, appears at the scene, and passively prevents officers from accessing a vehicle containing the target alien by forming a human chain around the vehicle. The ICE officers advise the group that they are there to execute a warrant of arrest and instruct the group members to step aside. The group members refuse and instead provide the driver with gas and food. The group members take no direct action against the ICE officers.

**What legal options are available to the officers to address the group's conduct?**



U.S. Immigration and Customs Enforcement

19



# Disruptive Protestors – Scenario 2 Cont'd

- The ICE officers may use force that is both necessary and reasonable to effectuate an arrest.

- The ICE officers may want to consider if the protesters' actions raise to the level of a criminal offense and are encouraged to consult with the local USAO regarding thresholds for potential criminal charges against the protesters, including 18 U.S.C. § 111 (for impeding outside the 9th Circuit), 18 U.S.C. § 1505 (obstruction) and/or 18 U.S.C. § 372 (conspiracy to impede an officer).

- While ICE officers have warrantless arrest authority for violation of *federal* criminal laws under circumstances described in 8 U.S.C. 1357(a)(5) and 19 U.S.C. 1589a, there is no federal statutory authority for ICE officers to arrest for State criminal offenses.


U.S. Immigration and Customs Enforcement

19

2025-ICLI-00065    190

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000190

20



# Administrative Warrants

- When conducting a pre-planned arrest, ERO officers must possess either a Form I-200, Warrant for Arrest of Alien, or Form I-205, Warrant of Removal.

- Both forms are administrative, rather than judicial, warrants.

- Possession of a valid Form I-200, Warrant for Arrest of Alien, **does not** authorize entry into a residence, private business, or any other non-public areas.

- Even with an I-200, Warrant for Arrest of Alien, you will either need **consent** or another exception to the warrant requirement to enter an area in which there is a reasonable expectation of privacy, *e.g.*, curtilage.



20

2025-ICLI-00065    191

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000191



# What Constitutes a "Search"

- There are two types of searches:

  - ***Katz* Search** – Government intrusion into an area where a person has a reasonable expectation of privacy (since 1967); or

  - ***Jones* Search** – Physical intrusion by the government into "enumerated" area for purpose of gathering information (*i.e.,* persons, houses, papers, and effects) (Jan. 2012).



21

2025-ICLI-00065    192

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000192



# What Constitutes a "Search", Cont'd

*Katz* **search** – Governmental intrusion into area where an individual has reasonable expectation of privacy. There are two components to the reasonable expectation of privacy analysis:

(1) Whether the person had a subjective expectation of privacy in the place searched, and

(2) Whether society is prepared to recognize that expectation as objectively reasonable.

*Jones* **search:**

- Physical intrusion by the government into a "constitutionally protected area" (*i.e.,* persons, houses, papers, and effects),

- Coupled with the purpose of gathering information (*e.g.,* -installing GPS monitor on a car).


U.S. Immigration and Customs Enforcement

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000193



# *Katz* Searches

| REP Present | No REP |
|---|---|
| A person has a subjective expectation of privacy in the place searched, and society accepts that expectation as reasonable: | Society does not accept subjective expectation of privacy in the below areas as reasonable: |

REP Present:
- Person's body
- Dwellings
- Curtilage
- Private Buildings and Spaces
- Baggage
- Conveyances
- Private Communications

No REP:
- Open Field
- Plain View Observations
- Conversation Overheard in Public
- Abandoned Property

23



2025-ICLI-00065    194

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000194



# *Jones* Searches

| Protected Areas: | Means that have been found to violate *Jones*: |
|---|---|
| • Person | • GPS attached to suspect's car for long-term tracking of suspect's movements |
| • Home, including curtilage | |
| • Papers | • Trained police dog sniffing for drugs while on the suspect's curtilage, or while touching the suspect's vehicle, to gather information/ investigate |
| • Effects | |



U.S. Immigration and Customs Enforcement

24

2025-ICLI-00065    195

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000195



# There's No Place Like Home!

Fourth Amendment protections are at their strongest in a person's dwelling under both *Katz* and *Jones*.





25

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000196

26



# What Constitutes a "Seizure?"

- There is a "seizure of a person" when:
  - The government
  - Interferes with a person's freedom of movement,
  - Resulting in an objectively **reasonable person** not feeling free to leave or terminate the encounter.

- Brief seizures are allowed with **reasonable suspicion** that criminal activity is afoot or the person is illegally in the United States. (*Terry* stop)

- A consensual encounter is *not* a Fourth Amendment seizure.

- There is a seizure of property when there is some meaningful interference with an individual's possessory interests in the property.



U.S. Immigration
and Customs
Enforcement

26

2025-ICLI-00065    197

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000197



# Seizure – Scenarios

- On your way to a target's home, you notice a pedestrian who resembles your target walking on the sidewalk next to your car. You slow down to let your partner talk to the pedestrian in attempt to positively identify the target.

- While surveilling a residence, you notice a pedestrian who resembles your target. You approach him, identify yourself as an ICE officer, and ask for his name. He refuses to answer and begins to turn away, at which point you grab his arm although you cannot make a positive identification.


U.S. Immigration and Customs Enforcement

27

2025-ICLI-00065    198

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000198

28



# Seizure – Scenarios, Cont'd

- You enter the home of a targeted alien based on consent of a co-tenant. You visually identify the target inside the home and arrest him based on probable cause. You have a mobile fingerprinting device with you, with which you take fingerprints from all other residents found in the home. Is this a seizure as to the co-tenants?



U.S. Immigration and Customs Enforcement

28

2025-ICLI-00065    199

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000199

29



# Exceptions to the Warrant Requirement

- Consent
- *Terry* Stop
- *Terry* Frisk
- Search incident to arrest
- Protective sweep
- Vehicle inventory (**not** permissible by ERO)
- Plain view seizure
- Officer safety
- Emergency aid
- Exigent circumstances
- Imminent destruction of evidence
- Hot pursuit



29

2025-ICLI-00065   200

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000200

30

# The Fourth Amendment as Applied to Fugitive Operations' Investigative Techniques



- The training that follows is structured to follow the life of a case from an investigation stage to arrest.

# (b)(5),(b)(7)(E)

30

2025-ICLI-00065    201

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000201



# Investigative Technique: Surveillance Scenarios

(b)(5),(b)(7)(E)



U.S. Immigration and Customs Enforcement

31

# Investigative Technique: Use of Technology

# (b)(5),(b)(7)(E)



REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000203



# Investigative Technique:
# Use of Technology, Cont'd

# (b)(5),(b)(7)(E)



33

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000204

34



# Conducting an Arrest at a Residence

- Fourth Amendment protections are strongest at a residence.

- Know where you are going. Is your intended location a residence?

- Whose residence is it? Consent will depend on this person.

- What Fourth Amendment exception, if any are applicable, allows you to enter the curtilage of the residence?



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    205

34

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000205



# Rules of Engagement

- **(b)(5),(b)(7)(E)**

- This policy is based on Rule 41(e)(2)(A)(ii) of the Federal Rules of Criminal Procedure which limits execution of criminal search warrants to daytime barring express finding of good cause by a judge. Fed. R. Crim. P. 41(a)(2)(B) defines "daytime" as the hours between 6:00 a.m. and 10:00 p.m., local time.

- If you plan to conduct an operation outside daytime hours, you must receive written supervisory authorization and articulate why it's necessary

**(b)(5),(b)(7)(E)**

- **(b)(5),(b)(7)(E)**



35

36



# Approaching a Home: Curtilage

- Curtilage is "the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life."

- When determining curtilage, consider:
  - The proximity to a home,
  - Single enclosure with home,
  - The area's use, and
  - Steps taken to prevent observation by passersby.

- Factors are analyzed under the "totality of the circumstances," meaning no one factor is dispositive.



U.S. Immigration and Customs Enforcement

36

2025-ICLI-00065    207

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000207

37



# Knock and Talk

- "Knock and talk" is a narrow exception to the Fourth Amendment's warrant requirement that permit law enforcement officers to approach a front door and ask questions.

- When conducting a "knock and talk," officers are entering the curtilage for the purpose of asking questions.



37

2025-ICLI-00065    208

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000208

38

# Knock and Talk, Cont'd

- In *Florida v. Jardines*, 569 U.S. 1, 6-8 (2013), the U.S. Supreme Court held that the customary invitation of homeowners allowing visitors to approach a home and knock on the front door did not allow police to conduct a "search" by using a drug-sniffing dog on the front porch of the home.

- The Supreme Court in *Jardines* cautioned that the scope of a license to enter onto the curtilage is limited not only to the *particular area* but also to a *specific purpose*, and there is no customary invitation to enter the curtilage simply to conduct a search, *e.g.*, dog sniff at the front door.

- There are special rules on curtilage in the Central District of California due to ongoing litigation.



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    209

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000209



# Curtilage – Scenario 1

You approach an apartment complex with multiple units and common area walkways that connect the buildings. You know your target lives on the first floor of one of the buildings. Using the walkway, you walk by the target's unit, but the walkway at this point is 6 feet away from the target's apartment building. There is a hedge partly covering the target's window, but outside that window, you notice a grill and a picnic table with some items on it. You step off the walkway and investigate the contents of the grill and the table.

**Were you in the apartment's curtilage?**



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    210

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000210

40

# Curtilage – Scenario 2

- You and your team approach an apartment complex. The building contains six units, two on each of the three floors. The target's apartment is on the second floor. The building has exterior doors at the front and rear that are usually closed and locked. In the back of the building is a common rear staircase that can be entered from the back of each apartment. Those stairs lead down to the first floor and on down to the basement.

- While you are speaking with the target's girlfriend at the target's apartment front door, a fellow officer stationed at the back of the building radios you.

- Your colleague says that the target left the unit by a backdoor and ran into the building's basement; that he gave chase and apprehended the target in the basement.



U.S. Immigration
and Customs
Enforcement

2025-ICLI-00065    211

40

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000211

41



# Curtilage – Scenario 2, Cont'd

- The basement is common to all the units in the apartment building and not supposed to be used by any particular unit for storage.

- **Is the basement "curtilage" protected by the Fourth Amendment?**



41

2025-ICLI-00065    212

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000212

42



# Curtilage – Scenario 3

Your target lives in a rural area on a large parcel of property which includes a house and fields. There is a shed on the property about 50 feet away from the house.

- Is the shed part of the curtilage?

- What about the farm's corn field?

- How do you get to the front door, which is clearly in the curtilage, to get the needed consent?


U.S. Immigration and Customs Enforcement

42

2025-ICLI-00065    213

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000213



# Curtilage - Implied License

- With the exception of the LOS AOR, law enforcement officers may walk across curtilage to speak to the occupants if the general public could do so as well, *e.g.*, postal workers and food delivery drivers have an implied license to access your curtilage to make deliveries.

- However, a law enforcement officer ***may not*** exceed the scope of a license.

  - License is granted for the purpose of contacting occupants, not looking through windows or conducting other "searches."



U.S. Immigration and Customs Enforcement

43

2025-ICLI-00065    214

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000214



# Curtilage – Implied License, Cont'd

- Implied licenses can be revoked.

- Locked gates and signs indicating you or the public are prohibited from entering are common ways to revoke an implied license.

- A closed but unlocked gate alone does not generally indicate the absence of implied license.

  - Consider the totality of the circumstances in determining if the general public would approach the door for the purpose of contacting an occupant. Where would USPS approach to leave a package?

- **Scenario:** Multiple "No trespassing" signs adorn the walkway of a home. **Has the target effectively revoked implied license?**



44

2025-ICLI-00065    215

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000215



# Knock and Talk:
# Consent to Enter/Search

- Consent is an exception to the warrant requirement.
- Consent requires the person granting consent:
  - Have **authority**, and
  - Provide consent **voluntarily**.
- Consent must be obtained **before** the entry or search.
- Officers must remain **within the scope** of consent.



45

2025-ICLI-00065    216



# Authority to Give Consent

- **Actual Authority**: The person with the expectation of privacy in the object or place to be searched has authority to consent. Examples include the homeowner or current tenant.

- **Common Authority**: Mutual use of property demonstrates joint access or control. Examples include a roommate or family member with keys to the house.

- **Apparent Authority**: If officers reasonably believe the person who gives consent has the authority to do so, then they may rely on that consent. (This serves as a defense; **do not** rely on this in practice).


U.S. Immigration and Customs Enforcement

46

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000217

47



# Authority to Give Consent, Cont'd

- May the following people consent to search of a dwelling? If so, do they have actual, common, or apparent authority?

  - A target's roommate. What if both are present?
  - Landlord
  - Employer in company housing
  - A frequent houseguest who often spends the night
  - A maid who comes by once a week

- May the following people consent to search of a vehicle?

  - Driver
  - Passenger. What if the passenger owns the vehicle?



U.S. Immigration and Customs Enforcement

47

2025-ICLI-00065    218

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000218



# Authority to Give Consent
# Scenario 1

You arrive at a target's residence to conduct a knock and talk. You notice there is an unmarked pickup truck in the driveway with cleaning supplies in the bed. At the door, you're greeted by a man wearing a shirt bearing the logo of a local cleaning company. He explains that the homeowner (your target) has hired him to clean his house once a week, and he has given him a spare key to enter if he isn't home.

**Does this person have authority to consent?**



U.S. Immigration
and Customs
Enforcement

48

2025-ICLI-00065     219

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000219

49



# Authority to Give Consent
# Scenario 2

Your target is a young woman in her early twenties. After arriving at her residence and knocking on the door, you're greeted by an elderly woman. She explains that she's the target's grandmother and lives there with her son, daughter-in-law, and granddaughter. Her son owns the home.

**Does she have authority to consent to entry?**



49

2025-ICLI-00065   220

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000220



# Consent: Was it Voluntary?

- Consent must be voluntary and not the product of coercion. **The government bears the burden of demonstrating that consent was voluntarily given.**
- Consent cannot be demonstrated by mere acquiescence.
- It is determined by **a totality of the circumstances.** Factors to consider:
    - Knowledge of right to refuse
    - Age
    - Intelligence
    - Education
    - Language proficiency
    - Degree to which the individual cooperates
    - Individual's attitude
    - Length of detention and questioning, and
    - Ruses or misrepresentations



U.S. Immigration and Customs Enforcement

50

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000221

51



# Consent: Was it Voluntary?
## Scenario 1

- You are conducting a "knock and talk" at a residence in NYC. The homeowner, who is not your target, answers the door.

- You ask if you can enter the home to search for the target, and the homeowner responds by stepping aside.

- **Is this consent voluntary?**



2025-ICLI-00065    222

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000222



# Consent: Was it Voluntary?
# Scenario 2

- You and your partner approach a home in Chicago in the early evening to conduct a "knock and talk." As you knock on the door, you hear loud music and yelling from inside. After several repeated knocks, someone other than your target answers the door. He is holding a red Solo cup and invites you in to join the party.

- **Is this consent voluntary? How do you know that the man with the Solo cup has authority to consent?**



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    223

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000223



# Consent: Was it Voluntary?
## Scenario 3

- You are conducting a "knock and talk" at a residence in Seattle, looking for a young male alien, who is the target of your investigation. An older male, who is the same race or nationality as your target, answers the door, and you discover that he has limited English proficiency. When you ask if you can enter, he nods his head.

- **Is this consent voluntary?  Based on these facts, how would you prove at trial that the man understood what you were asking?**



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    224

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000224

54



# Consent: Ruses

- The use of a ruse may impact the voluntariness of consent.

- Ruses must **not** be coercive:
  - May not convince the resident that they have no choice but to let you inside.
  - The totality of circumstances will determine if a particular ruse is coercive.



U.S. Immigration and Customs Enforcement

2025-ICLI-00065   225

54

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000225



# Consent: Ruses, Cont'd

- Pursuant to the former Acting Director for the Office of Detention and Removal Operations (DRO) John Torres' memorandum, *Uses of Ruses in Enforcement Operations* (Mar. 6, 2006), ruses may involve impersonating employment with other federal, state, local, or private entities.

- However, ICE must first provide a notice to the affected entity to afford it the opportunity to raise concerns regarding the effect the ruse may have on its security or public image.

- The point of contact with the proposed cover entity shall be the appropriate agency head authorized for providing concurrence.



U.S. Immigration and Customs Enforcement

55

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000226



# Consent: Ruses, Cont'd

- Pursuant to the former Acting DRO Director John Torres' and HSI Director Marcy Foreman's memorandum, *Use of Ruses in Enforcement Operations* (Aug. 22, 2006), ICE law enforcement officers may not use ruses involving health and safety programs administered by a private entity or a federal, state, or local government agency, such as Occupational Safety and Health Administration for purposes of immigration work site enforcement.



U.S. Immigration
and Customs
Enforcement

2025-ICLI-00065    227

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000227

57



# Consent: Timing and Positioning Matters

- You must obtain consent **before** entering and beginning to search. Keep in mind that consent to enter is not the same as consent to search.

- **(b)(5),(b)(7)(E)**

- **Scenario:** At the doorway before obtaining consent to enter, you place your foot on the threshold to keep the door open. **Is this a problem?**



U.S. Immigration and Customs Enforcement



57

2025-ICLI-00065    228

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000228

58



# Consent: Best Practices

- Obtain **express** consent from a **resident**.

- Document consent on the Form I-213.
  - **Who** gave consent, and **what** authority did they have to give consent? (Tenant? Co-tenant?)
  - **What** exactly did they say? What language did they use? Include clear statement of consent on Form I-213?
  - **When** did they say it?
  - **Where** were they when they said it?
  - **Who** witnessed the consent statement?



U.S. Immigration and Customs Enforcement

58

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000229

59



# Consent: Scope and Withdrawal

- Searches must not exceed the scope of consent.

- Consent to *enter* a home is not consent to *search* the entire home.

- Withdrawal or narrowing of consent must be honored:
    - Must be clearly expressed by actions or words.
    - Plain view seizure of evidence or a target is permitted even following withdrawal of consent *but only* if the officer has probable cause to seize the evidence or person and lawful access to it.

- A co-tenant may revoke or narrow the consent.



U.S. Immigration and Customs Enforcement

59

2025-ICLI-00065    230

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000230

60



# Consent: Scope and Withdrawal Scenarios

- You are in the home and ask whether you can search the bedrooms, and the resident of the home says no. **Can you still search the rest of the home?**

- You are in the home and the spouse of the target shows up and starts yelling "get out of my house now jerks!" **Do you have to leave?**

- Police officers came along with you and they recognize the spouse. They arrest him on three outstanding warrants and take him away. You ask the resident again whether you can enter and search the bedrooms, and she agrees. **Can you search?**

- Your search is taking longer than expected, and the resident starts impatiently stamping her foot. **Should you continue your search?**



60

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000231



# Protective Sweeps



# (b)(5),(b)(7)(E)



2025-ICLI-00065    232

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000232

62

# Protective Sweeps, Cont'd

- Examples of specific and articulable facts that may aid in justifying a protective sweep:



## (b)(5),(b)(7)(E)

2025-ICLI-00065    233

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000233

63



# Protective Sweeps – Scenarios

- You obtain consent to enter a residence and, upon entry, see narcotics on a table. **Does this justify a protective sweep?**

  - What if in addition to the narcotics, you also saw two guys rushing out of the place through a back door?

- You go to a three-flat dwelling and are in one of the units arresting a person. You hear noises from the apartment above, which you expected to be vacant. **Can you search that unit?**

- You conduct a protective sweep in a bedroom and find no danger. You think to yourself, "I'm already in here, might as well look around." **Can you keep searching?**



U.S. Immigration and Customs Enforcement

2025-ICLI-00065     234

63

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000234

# Plain View Seizure

- Must have plain view from a lawful vantage point.

- Must have lawful right of access.

- Illegal/evidentiary nature must be immediately recognizable.





2025-ICLI-00065   235

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000235



# Consensual Questioning

- An immigration officer may question anyone as long as the immigration officer does not restrain the freedom of an individual to walk away.

- Information obtained from this questioning may provide the basis for a subsequent arrest.



2025-ICLI-00065    236

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000236

66



# Interrogation and Detention Not Amounting to Arrest

Per 8 C.F.R. § 287.8 (b)(2):

> If the immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned is, or is attempting to be, engaged in an offense against the United States or is an alien illegally in the United States, the immigration officer may *briefly* detain the person for questioning.



66

2025-ICLI-00065    237

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000237

67



# Spectrum of Engagement

- **Be Cognizant of the Spectrum of Engagement**
  - A consensual encounter is an encounter in which a reasonable person would feel free to walk away.
  - *Terry* stop – Must be based on individualized, articulable reasonable suspicion specific to the individual being stopped.
  - Arrest – Must be based on probable cause.
- **Application to Non-Targets**
- Must have individualized, reasonable suspicion based on specific articulable facts prior to detaining to question about citizenship or asking for ID.



67

2025-ICLI-00065    238

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000238

68



# Spectrum of Engagement, Cont'd

- **Targets**: Once identified, there is PC to arrest.

- **Non-Targets**: If you have individualized reasonable suspicion, you may briefly detain to question. If no such suspicion exists, only engage in a consensual conversation. For example, "Would you mind answering some questions?"

- May question non-targets only without showing force other than that necessary to secure the scene, indicating that not answering questions will have negative consequences, or moving the non-target from the scene in the absence of probable cause.



U.S. Immigration and Customs Enforcement

68

2025-ICLI-00065    239

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000239

# Documentation is the Key

- As soon as possible after the collateral encounter, *document in the I-213 either the basis for the particularized reasonable suspicion, or* how the officer made it clear to the collateral that the individual was free to leave.

- **Documentation is KEY** – By the time the circumstances of the stop is litigated, years will have passed since the arrest. The officers will likely have no independent recollection of the stop leading to an arrest. In that case, without a detailed I-213 documenting the circumstances of the collateral's arrest, the Government has no way to rebut a claim of unlawful detention.


U.S. Immigration and Customs Enforcement

69

2025-ICLI-00065    240

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000240

70



# Exigent Circumstances: Emergency Aid and Officer Safety

- This exception permits law enforcement officers to enter a home or curtilage without a warrant based on the need to render emergency assistance to an injured occupant or to protect an occupant from **imminent** injury.

- It has also been used for warrantless GPS searches and vehicle stops in cases of imminent danger to a victim.

- Officer safety can also permit the entry of a home without a warrant, but the cases that discuss this exception involve **immediate unambiguous** threats.



U.S. Immigration and Customs Enforcement

70

2025-ICLI-00065    241

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000241

71

# Exigent Circumstances: Emergency Aid and Officer Safety Scenarios

- You approach a target's home and can see from the street that a vehicle has crashed into the side of the home. You observe a trail of blood leading to the door. The door is ajar and you try to get consent to enter, but the visibly bleeding and injured target refuses to let you in. **Can you enter the residence anyway?**

- You approach the home of a target who you know has a history of violent crime, including assaults on police. As you approach the home, the target states he has a "g\*\*d\*\*\* gun" and is not afraid to use it. **Can you enter for officer safety?**



U.S. Immigration and Customs Enforcement

71

2025-ICLI-00065    242

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000242

72



# The Spectrum of Engagement

## Be Cognizant of the Spectrum of Engagement

- A **consensual encounter** is an encounter in which a reasonable person would feel free to walk away.

- *Terry* **stop** – Must be based on individualized, articulable reasonable suspicion specific to the individual being stopped.

- **Arrest** – Must be based on probable cause.



2025-ICLI-00065    243

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000243



# Out and About: Street Arrests

- What exceptions to the warrant requirement apply?

  - Consensual encounters

  - *Terry* stops

  - *Terry* stops – Vehicles

  - *Terry* frisks

  - Exigent Circumstances – Hot Pursuit



U.S. Immigration and Customs Enforcement

2025-ICLI-00065   244

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000244



# Consensual Encounters Scenarios

- While conducting surveillance on a residence, you spot someone walking down the street who looks like your target. You approach the individual, introduce yourself as an ICE agent, and ask for his name. **Is this OK?**

- What if the person sounds annoyed, but is still talking to you?

- When you ask the person to show you an ID, he refuses and says, "I am going home." **Can you stop him?**

- The person gives a name that does not match your target. You keep asking questions and learn that he is an illegal alien. **Can you arrest him?**



U.S. Immigration and Customs Enforcement

74

2025-ICLI-00065    245

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000245

75



# *Terry* Stop

- A *Terry* stop is a **brief** seizure that may lead to a full arrest **if** probable cause is developed. Otherwise, the subject must be released.

- Requires:
  - Reasonable suspicion that criminal activity is afoot or
  - Reasonable suspicion that the individual is illegally present in the United States.

- Scope:
  - To investigate and confirm suspicion to make an arrest or dispel suspicion to terminate the seizure.

- Officer must use "due diligence" and the "least intrusive means" for the seizure to maintain its lawfulness, unless probable cause is developed.



U.S. Immigration and Customs Enforcement

75

2025-ICLI-00065    246

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000246

# *Terry* Stop, Cont'd



- The legality of a *Terry* stop depends on the officer's ability to articulate reasonable suspicion **prior** to any seizure.

- Document **with specificity** the factors that lead to the seizure.

- # (b)(5),(b)(7)(E)

- *Terry* stops are **not** allowed in a subject's home.

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000247



# *Terry* Frisk

- Requires:
  - Lawful seizure, and
  - Reasonable suspicion person is armed and dangerous.

- Scope:
  - Pat down for weapons only.

- **(b)(5),(b)(7)(E)**



2025-ICLI-00065    248

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000248



# *Terry* Stop Vehicles - Scenarios

| Border Patrol stops a vehicle 200 miles from the border | Border Patrol stops a vehicle 200 miles from the border |
|---|---|
| **What the officers described:** an SUV with multiple passengers at 8:30 a.m. The SUV is sagging in the rear.<br><br>The driver switches from the left lane to the right lane, getting behind a truck that was traveling much slower than the speed limit despite the fact there is no traffic on the left lane.<br><br>The agents observe a passenger in the cargo area of the vehicle where there is no seat. The car is registered in a town north of the location of travel and appears driving from the border to the north. Although the driver is well groomed and dressed appropriately for the weather, the passengers look dirty and are wearing clothes that are not appropriate for the weather.<br><br>The agents try to get the attention of the driver by honking, but he ignores them. | **What the officers described:** an extended cab truck traveling west with a driver and five other people. The truck was dragging some brush. When the officers drove up to the vehicle the passengers did not make eye contact with them. The car was registered in Fort Worth/Dallas which the officers stated was common for persons smuggling. |



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    249

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000249

79

# *Terry* Stop – Vehicles

- **Vehicle Stops** (*Terry* stops in vehicles) are permitted only when you have reasonable suspicion that any occupant of the vehicle is unlawfully in the United States.
    - ICE cannot conduct a *Terry* stop based on local traffic laws (*e.g.,* ICE officers cannot pull someone over for speeding or a broken taillight).

- Pursuant to 8 C.F.R. 287.8(e), only immigration officers who need the authority to initiate vehicular pursuit in order to effectively accomplish their individual mission and who are designated, individually or as a class by ICE Director may engage in vehicle pursuit.

- # (b)(5),(b)(7)(E)

- Pursuant to a lawful stop, the officer may order the driver/passengers to step out of a vehicle.



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    250

79

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000250

80



# *Terry* Stop – Vehicles, Cont'd

- Reasonable suspicion of unlawful presence in the United States is required at **all** stages of a vehicle stop.

- After such questioning, any further detention or search must be based on the occupants' consent or probable cause of unlawful presence in the United States.

- If the target is not in the car, the officers may not continue to detain and question the occupants of the car, (*e.g.,* ask for ID) without reasonable suspicion that an occupant(s) may be in the United States unlawfully.



80

2025-ICLI-00065    251

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000251



# *Terry* Stop – Vehicles, Cont'd

In relevant part, 8 U.S.C. § 1357(a)(2) states:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant--

> (2) [. . .] to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest[.]

- The "reason to believe" standard requires ICE Officers to have **probable cause** that an individual is in the United States in violation of U.S. immigration laws and is likely to escape prior to making a warrantless arrest.


U.S. Immigration and Customs Enforcement

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000252



# The "Likely to Escape" Analysis is Required

- Must consider the **totality of circumstances**.

- There is **no** exhaustive list of factors that should be considered in determining whether an individual is "likely to escape before a warrant can be obtained" under 8 U.S.C. § 1357(a).

- *However, some* examples of relevant factors may include:

  - The individual's true identity and residence, prior escapes or evasions of immigration authorities, attempted flight from an officer, lack of ties to the community, or any other specific circumstances that justify a reasonable belief that the subject is likely to escape.

82

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000253

# The "Likely to Escape" Analysis is Required, Cont'd

- Family, home, or employment may be examples of community ties that weigh against a likelihood of escape.

- Mere presence within the United States in violation of U.S. immigration law is not, **by itself**, enough to conclude that an alien is likely to escape.

- **Examples from case law**:

  - An individual in jail for a crime could not flee.

  - No evidence that a woman in her own home was likely to escape. Warrantless arrest was improper.



U.S. Immigration and Customs Enforcement

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000254

84



# The "Likely to Escape" Analysis is Required, Cont'd

- **More examples from case law:**

  - An alien living with his U.S. citizen wife, who filed an application to adjust his status, was not likely to escape.

  - Where immigration officers received a tip about an alien from bail bondsmen and the alien had always been home over three visits from the bondsmen, the local man was not a flight risk.

  - Likelihood of flight was a serious threat where the suspects were travelling on interstate highway at high speed over a great distance.



84

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000255

85



# The "Likely to Escape" Analysis is Required, Cont'd

**Key Points**:

- The flight risk analysis must take place *prior to* the warrantless arrest.

- The flight risk analysis is required for all warrantless arrests, whether the individual is the target or a collateral.

- Any questioning of a collateral must be either consensual or supported by reasonable suspicion to believe the individual is not authorized to be in the United States.



85

2025-ICLI-00065    256

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000256



# Vehicle Stops and the "Likely to Escape" Analysis

**Key Points**:

- The "likely to escape" analysis under 8 U.S.C. § 1357 (a)(2) applies to all warrantless arrests, including those resulting from vehicle stops.

- All vehicle stops to enforce civil immigration laws require specific, articulable facts that reasonably warrant suspicion that the vehicle contains an alien who may be illegally in the country.

- As federal law enforcement officers, ICE officers **lack authority** to enforce state or local vehicle or traffic laws.



86

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000257



# The "Likely to Escape" Analysis and I-213 Documentation

- **Hypo**: Three years after the arrest, you are interviewed by a DOJ attorney about the circumstances of the arrest as the alien has sued alleging racial profiling.

- Would you remember whether you conducted a flight risk analysis, much less what factors you considered before deciding that this individual would be gone by the time you returned with a warrant?

87

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000258

88

# The "Likely to Escape" Analysis and I-213 Documentation, Cont'd

Since you may not remember all the necessary details years later when you asked to recall the event, what can you do to help you remember?

- Form I-213: After a warrantless arrest under 8 U.S.C. § 1357(a)(2), an ICE officer can document the facts and circumstances surrounding that warrantless arrest in the narrative section of the alien's I-213 as soon as practicable.



U.S. Immigration and Customs Enforcement

88

2025-ICLI-00065   259

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000259

# Warrantless Arrest I-213: Best Practices

1. The alien was arrested without a warrant;

2. The location of the arrest (e.g., place of business, residence, vehicle, or a public area);

3. Whether the alien is an employee of the business if arrested at a place of business, or whether the alien is a resident of the residence if arrested at a residential location;

4. The alien's ties to the community, if known at the time of arrest, including family, home, or employment;

5. The specific, particularized facts supporting the conclusion that the alien was likely to escape before a warrant could be obtained, and

6. A statement of how "at the time of arrest, the designated immigration officer [did], as soon as it [wa]s practical and safe to do so, identify himself or herself as an immigration officer who is authorized to execute an arrest; and state[d] that the person is under arrest and the reason for the arrest, as required by 8 C.F.R. § 287.8(c)(2)(iii)."



U.S. Immigration and Customs Enforcement

89

2025-ICLI-00065    260

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000260



# More on Warrantless Arrests

- **(b)(5),(b)(7)(E)**
-
-



90

91

# Vehicle Stops – Use of Force

- The amount of force required to ensure the exit of a driver or passenger from a vehicle should be **minimal force that is both necessary and reasonable** to effectuate a lawful purpose (*i.e.,* first step in arresting an occupant of a vehicle is NOT to reach in and grab him, unless there are specific circumstances requiring that action).

- The use of force to remove a target from the car should only be used where probable cause can clearly be established and there is some element of danger or threat.

- The reasonableness of the degree of force used depends on the specific circumstances, *e.g.*, presence of feasible alternatives.


U.S. Immigration and Customs Enforcement

91

2025-ICLI-00065    262

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000262



# Vehicle Stops - Use of Force

In analyzing an excessive-force claim, courts examine whether the force used was objectively reasonable, considering:

- The severity of the crime at issue;
- Whether the suspect is actively resisting arrest or attempting to evade arrest by flight;
- Whether the suspect poses an immediate threat to safety of the officers or others;
- Whether the suspect is violent or dangerous;
- The duration of the action;
- Whether the action takes place in the context of effecting an arrest;
- Possibility suspect is armed, and
- Number of persons LEO must contend with at one time.



U.S. Immigration and Customs Enforcement

92

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000263



# Vehicle Stops – Use of Force

| Summary Dismissal of Excessive Force Claim Upheld *Ickes v. Grassmyer*, 704 Fed. Appx. 190 (3d Cir. 2017) | No Qualified Immunity for Officers *Davis v. Clifford*, 825 F.3d 1131 (10th Cir. 2016) |
| --- | --- |

- **Target: known to the officers** as member of an anti-tax movement who had many **previous run-ins with police.**
- **Plus suspicious action**: refusing to pull over until reaching a secluded private driveway belonging to a fellow member of movement who confronted police with a gun in the past.
- **The key factor for the court - use of force was limited & directly related to completing the arrest:** officer broke a car window to reach in and open the car door, through which he pulled the target out.

- **Target**: No immediate threat could be articulated (her car had handicapped plates, and although key was left in the ignition and she refused to exit as ordered, she was surrounded on all sides by police cars).
- **Use of force went beyond that needed for an arrest**: Police broke a window, and instead of reaching in to open the door, they grabbed her by her hair and arms and pulled her through the shattered window, and pinned her faced down on broken glass.



2025-ICLI-00065    264

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000264

94



# Exigent Circumstances: Hot Pursuit

- Applies if:
  - You have probable cause to arrest the suspect of a **serious violent** crime (not an administrative arrest); and
  - In immediate or continuous pursuit of suspect.

- Possible applications: An enforcement operation involving an alien wanted for a serious crime, *i.e.,* a felony, who is found on the street or exits his home in response to a ruse and runs back into the home upon officers attempting to arrest him.



U.S. Immigration and Customs Enforcement

94

2025-ICLI-00065    265

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000265



# Search Incident to Arrest

- Requires:
  - Lawful arrest

- Purpose:
  - Discover weapons;
  - Prevent destruction or concealment of evidence; or
  - Discover tools that may be used to escape.

- Must be contemporaneous with arrest.

- In spaces immediately adjoining the place of arrest from which an attack could be immediately launched.



U.S. Immigration and Customs Enforcement

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000266

# Search Incident to Arrest, Cont'd

- Scope:
  - Arrestee's person
  - Arrestee's area of "immediate control"
  - Different from a protective sweep because it does not extend to other areas of the home.
  - Example of adjoining area of potential danger: Opening a bedroom closet door when an arrest is made in that bedroom to prevent access to weapons or means of escape.





U.S. Immigration and Customs Enforcement

2025-ICLI-00065    267

96

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000267



# Search Incident to Arrest: Cell Phones

- During a lawful arrest, officers may seize a cell phone.

- A judicial search warrant is required to search the contents a cell phone seized incident to arrest.

- During a lawful arrest, ERO officers may examine the physical aspects of the phone to ensure it will not be used as a weapon, *e.g.*, hidden razor blade in case.

- Officers may also rely on an exception to the warrant requirement, *e.g.,* consent, exigent circumstances or plain view (the phone's screen is on and displaying incriminating evidence).

- ## (b)(5),(b)(7)(E)


U.S. Immigration and Customs Enforcement

97

2025-ICLI-00065    268

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000268



# Search Incident to Arrest: Vehicle

*Gant* **Rule** – The search of a **vehicle** incident to a lawful arrest of recent vehicle occupants is authorized **only** when either:

- The arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search, or

- It is reasonable to believe *evidence relevant to the crime of arrest* might be found in the vehicle.



U.S. Immigration and Customs Enforcement

2025-ICLI-00065    269

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000269



# Vehicle Inventory

- After taking custody of a vehicle, police may conduct an inventory search provided the officer's custody was lawful and it is done according to policy.

- (b)(7)(E)



2025-ICLI-00065    270

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000270



# AOR SPECIFIC TRAINING

- This ends the general Fourth Amendment training presentation. You will now be directed to the circuit-specific training for your respective AOR.



2025-ICLI-00065    271

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000271



# QUESTIONS?



*Enforcing the law means nothing if we don't follow the law while doing so*

101

2025-ICLI-00065    272

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000272



2025-ICLI-00065    273

REL0000222044

DHS-ICE-25-0213, 25-0481, 25-0956-A-000273