# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
Criminal No. 26-CR-112-NEB

STATE OF MINNESOTA,

     v.

GREGORY DONNELL MORGAN, JR.,

     ***Defendant.***

**STATEMENT OF INTEREST
OF THE UNITED STATES**

**TABLE OF CONTENTS**

**INTRODUCTION** ...................................................................................... 1

**BACKGROUND** ..................................................................................... 2

**LEGAL STANDARD** .............................................................................. 5

**ARGUMENT** ........................................................................................... 8

**I.   Officer Morgan is a Federal Officer.** .............................................. 8

**II.    The State's Evidence Confirms Officer Morgan was Acting Under Color of his Office.** .................................................................................. 8

**III.   The State's Evidence Confirms the Existence of Colorable Federal Defenses.** .................................................................................................. 18

**IV.    The State's Arguments for Remand Are Unpersuasive.** ......................... 23

**V.    CONCLUSION** ................................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Hill,*
504 F.3d 1323 (9th Cir. 2007) ................................................................ 11

*Arizona v. Manypenny,*
451 U.S. 232 (1981) ................................................................................ 6

*Baird v. Renbarger,*
576 F.3d 340 (7th Cir. 2009) .................................................................. 9

*Barnes v. Felix,*
605 U.S. 73 (2025) ................................................................................ 25

*Chevron USA Inc. v. Plaquemines Par., Louisiana,*
146 S. Ct. 1052 (2026) ................................................... 6, 7, 17, 20

*Ching as Tr. for Jordan v. City of Minneapolis,*
73 F.4th 617 (8th Cir. 2023) ................................................................... 4

*Clark v. Clark,*
926 F.3d 972 (8th Cir. 2019) ............................................................ 9, 16

*Clifton v. Cox,*
549 F.2d 722 (9th Cir. 1977) ................................................... 18, 19, 26

*Colorado v. Symes,*
286 U.S. 510 (1932) ................................................................................ 6

*Cooney v. Alberto,*
No. 2:13-CV-01849 DMC, 2013 WL 6008300 (D.N.J. Nov. 12, 2013) ........... 10

*County of Los Angeles v. Mendez,*
581 U.S. 420 (2017) .............................................................................. 26

*Galvan v. United States,*
318 F.2d 711 (9th Cir. 1963) ................................................................ 14

*Georgia v. Heinze,*
637 F. Supp. 3d 1316 (N.D. Ga. 2022) ............................................ 15, 20

*Graham v. Connor,*
490 U.S. 386 (1989) ..................................................................... passim

*Griffin v. Optum, Inc.,*
175 F.4th 897 (8th Cir. 2026) ........................................................... 7, 23

*Heien v. North Carolina,*
574 U.S. 54 (2014) ................................................................................ 16

*In re Lewis,*
83 F. 159 (D. Wash. 1897) .................................................................... 19

*In re Neagle,*
135 U.S. 1 (1890) ................................................................... 18, 23, 24

*In re Prempro Prods. Liab. Litig.,*
591 F.3d 613 (8th Cir. 2010) ................................................................ 24

*Jefferson County v. Acker,*
527 U.S. 423 (1999) ................................................................ 7, 20, 23

ii

*Kaley v. United States,*
571 U.S. 320 (2014) ...................................................................... 12

*Kentucky v. Long,*
837 F.2d 727 (6th Cir. 1988) ........................................................ 19

*Latiolais v. Huntington Ingalls, Inc.,*
951 F.3d 286 (5th Cir. 2020) .......................................................... 7

*Leite v. Crane Co.,*
749 F.3d 1117 (9th Cir. 2014) ................................................ 23, 24

*Loch v. City of Litchfield,*
689 F.3d 961 (8th Cir. 2012) ........................................................ 15

*Magnin v. Teledyne Cont'l Motors,*
91 F.3d 1424 (11th Cir. 1996) .................................................. 7, 21

*Maryland v. Soper,*
270 U.S. 36 (1926) ....................................................................... 21

*Mayor of Nashville v. Cooper,*
73 U.S. 247 (1867) ....................................................................... 21

*McDonough v. Toles,*
476 F. Supp. 3d 882 (D. Minn. 2020) ............................................ 9

*Mesa v. California,*
489 U.S. 121 (1989) .............................................................. passim

*Molina-Gomes v. Welinski,*
676 F.3d 1149 (8th Cir. 2012) ...................................................... 26

*Monroe v. City of Phoenix,*
248 F.3d 851 (9th Cir. 2001) ........................................................ 11

*Morgan v. Washington,*
212 F. App'x 606 (9th Cir. 2006) .................................................. 22

*New York v. Tanella,*
239 F. Supp. 2d 291 (E.D.N.Y. 2003) ........................................... 21

*New York v. Tanella,*
374 F.3d 141 (2d Cir. 2004) ........................................... 16, 18, 26

*Osborn v. Haley,*
549 U.S. 225 (2007) ....................................................................... 8

*Petition of McShane,*
235 F. Supp. 262 (N.D. Miss. 1964) ............................................. 19

*Reed v. Madden,*
87 F.2d 846 (8th Cir. 1937) .......................................................... 18

*Shannon v. Koehler,*
616 F.3d 855 (8th Cir. 2010) ........................................................ 12

*Tennessee v. Davis,*
100 U.S. 257 (1879) ....................................................................... 6

*Tennessee v. Garner,*
471 U.S. 1 (1985) .................................................................. 10, 11

*Texas v. Kleinert,*
855 F.3d 305 (5th Cir. 2017) .................................................. passim

iii

*Thai v. Saul,*
  804 F. App'x 485 (9th Cir. 2020) ................................................................. 9
*United States v. Boone,*
  738 F.2d 763 (6th Cir. 1984) ..................................................................... 13
*United States v. Carlone,*
  603 F.2d 63 (8th Cir. 1979) ....................................................................... 14
*United States v. Clemons,*
  32 F.3d 1504 (11th Cir. 1994) ................................................................... 13
*United States v. Davidson,*
  567 F. App'x 90 (3d Cir. 2014) .................................................................. 14
*United States v. Drayton,*
  536 U.S. 194 (2002) ................................................................................... 15
*United States v. Feola,*
  420 U.S. 671 (1975) ................................................................................... 14
*United States v. Garcia,*
  868 F.2d 114 (4th Cir. 1989) ..................................................................... 14
*United States v. Gauvin,*
  173 F.3d 798 (10th Cir. 1999) ................................................................... 14
*United States v. Gumbs,*
  964 F.3d 1340 (11th Cir. 2020) ................................................................. 14
*United States v. Heliczer,*
  373 F.2d 241 (2d Cir. 1967) ...................................................................... 13
*United States v. Hoffer,*
  869 F.2d 123 (2nd Cir. 1989) .................................................................... 13
*United States v. Stephenson,*
  708 F.2d 580 (11th Cir. 1983) ................................................................... 13
*United States v. Street,*
  66 F.3d 969 (8th Cir. 1995) ....................................................................... 13
*United States v. Todd,*
  245 F.3d 691 (8th Cir. 2001) .................................................................. 6, 7
*United States v. Wheeler,*
  831 F. App'x 53 (3d Cir. 2020) .................................................................. 14
*United States v. Yates,*
  304 F.3d 818 (8th Cir. 2002) ..................................................................... 14
*Willingham v. Morgan,*
  395 U.S. 402 (1969) ................................................................................. 7, 9
*Wyoming v. Livingston,*
  443 F.3d 1211 (10th Cir. 2006) ........................................................... 18, 25

**Statutes, Regulations, and Other Authorities**

8 C.F.R. § 287.5(c)(3)(iv) ................................................................................. 3
8 U.S.C. § 1357(a)(5) ................................................................................... 3, 10
18 U.S.C. § 111 ......................................................................................... 10, 13, 14
28 U.S.C. § 517 ................................................................................................ 1

28 U.S.C. § 1442.................................................................................... passim
28 U.S.C. § 1455.................................................................................... 5, 6, 23
U.S. Const. amend. IV ............................................................................. 10

## INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, in support of the removal of this criminal prosecution to federal court. The United States, through undersigned counsel, intends to appear at the July 20 evidentiary hearing and present argument on the question of removal.[1]

In this case, the Hennepin County Attorney's Office ("Hennepin County") is prosecuting Immigration and Customs Enforcement ("ICE") Deportation Officer Gregory Morgan for actions he took while performing federal duties as part of Operation Metro Surge. Officer Morgan removed his prosecution to this federal forum, as is his right under 28 U.S.C. § 1442.

Removal is appropriate here. Officer Morgan has made an adequate threshold showing that he is being prosecuted for actions taken within the scope of his federal employment, and that he will raise colorable federal defenses. For purposes of removal, Officer Morgan easily satisfies the minimal standard for raising a colorable federal defense. For example, Officer Morgan has a colorable defense of immunity under the U.S. Constitution's Supremacy Clause because he has reasonably alleged that his conduct was necessary and proper to the performance of his federal duties.

While not a party, the United States has distinct interests in this matter: First, the guarantee of a federal forum when a federal employee is being prosecuted for

---

[1] The Attorney General may send any officer of the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

actions within the scope of his employment and where he has raised a colorable federal defense is important to ensure federal employees are not chilled in carrying out their official duties. This is particularly so where local authorities have been forthright about their animosity towards the federal operation an officer took part in. Second, the United States' interests are amplified by Hennepin County's repeated mischaracterization of the legal standards regarding federal officer removal and its claim that federal officers cannot reasonably act in defense of themselves and others when threatened with violence.

Officer Morgan did not initiate the situation underlying this prosecution. Rather, he performed the job he is paid to do by quickly responding to someone who was repeatedly interfering with his federal law enforcement duties and engaging in conduct a law enforcement officer could reasonably conclude was causing danger not only to law enforcement but to the public at large. The question now is not about where or how Officer Morgan was driving; it is about whether federal officers can respond with a show of force when faced with threats of imminent bodily violence. They can. Removal is warranted.

## BACKGROUND

ICE Deportation Officers are federal law enforcement officers charged with enforcing immigration law. Deportation Officers identify, locate, and apprehend noncitizens; prepare investigative reports and conduct interviews; document, transport, escort, and remove from the United States criminal and non-criminal migrants; and perform support duties such as taking fingerprints and photographs.

As federal law enforcement officers, Deportation Officers have the authority to arrest a person "for any offense against the United States, if the offense is committed in the officer's or employee's presence." 8 U.S.C. § 1357(a)(5)(A); 8 C.F.R. § 287.5(c)(3)(iv) (listing "Deportation officers" among those able to make such arrests). Deportation Officers are bound by ICE and Department of Homeland Security use-of-force policies.[2]

Beginning in December 2025, United States Immigrations and Customs Enforcement ("ICE") commenced an immigration enforcement operation in the Twin Cities—Operation Metro Surge. The Acting ICE Director described the operation as the agency's largest immigration operation ever. By early February, federal officers had arrested more than 4,000 people.[3] DHS also reported, however, that "coordinated attacks of violence against our law enforcement" had occurred during the operation. *Id.*

On February 5, 2026, Officer Morgan was a Deportation Officer with ICE Enforcement Removal Operations detailed to Minneapolis. *See* Dkt. No. 2 (PC Stmt.) at 2. Officer Morgan and his partner were on duty in an unmarked Ford Expedition

---

[2]     *ICE Directive 19009.6: Firearms and Use of Force*, U.S. Immigr. and Customs Enf't, (May 26, 2023), https://perma.cc/HLH9-QJ9E ("ICE Directive"); Memorandum from Alejandro N. Mayorkas, Sec'y, to Agency Leaders of U.S. Dep't of Homeland Sec. on Update to the Dep't Pol'y on the Use of Force (Feb. 6, 2023), https://perma.cc/MJK7-ZH7B ("DHS Policy").

[3]     *See* Press Release, U.S. Dep't of Homeland Sec., DHS Reaches More than 4,000 Arrests of Illegal Aliens Including Murderers, Sex Offenders, Gang Members, and Terrorists in Minn. Since Operation Metro Surge Began (Feb. 4, 2026), https://perma.cc/QY8V-3Q3D.

driving on the right shoulder of the highway during apparent rush hour traffic. *See id.* at 3. They had been conducting surveillance for ICE and were traveling to their base. *Id.*

The driver of a white Cadillac and his passenger saw Officer Morgan's vehicle coming up on the right. The passenger has stated that Officer Morgan was going "really, really fast." *Id.* Attempting to "block" Officer Morgan and "cut him off a little bit," the driver pulled over onto the shoulder in front of Officer Morgan. *Id.* at 2. Video footage shows that the driver swerved in front of or at Officer Morgan at least twice in a matter of seconds.[4] At the second swerve shown, the other car drives so close to Officer Morgan, so suddenly and abruptly, that Officer Morgan is forced to swerve to the right, nearing the edge of the road. The white car then continues up into the rest of traffic. The two vehicles drive alongside one another for a time until both merge into traffic.

Officer Morgan stated to local police that after the second swerve he "feared for his safety and the safety of others so, in response, he pulled alongside" the white car, "rolled down his window, drew his firearm, and yelled 'Police Stop.'" Dkt. No. 2

---

[4]    The video is publicly available from multiple sources: *e.g.,* (i) FOX 9 Minneapolis-St. Paul, *Video: ICE agent points gun at another drive,* (YouTube, Apr. 17, 2026), https://www.youtube.com/watch?v=K3xsayRKNRg; (ii) FOX 9, *ICE agent assault charge: Defense says traffic encounter was 'initiated by the other driver'* (May 20, 2026), https://www.fox9.com/news/ice-agent-assault-charge-defense-says-other-driver-initiated-may-20. The Court may consider video of this incident. The probable cause statement expressly refers to and extensively discusses traffic camera footage, *see* Dkt. No. 2 (PC Stmt.) at 4, and the Eighth Circuit has instructed that "[v]ideos of an incident are necessarily embraced by the pleadings." *Ching as Tr. for Jordan v. City of Minneapolis,* 73 F.4th 617, 621 (8th Cir. 2023).

(PC Stmt.) at 3. Officer Morgan stated he was trying to get the driver of the white car to "'back up.'" *Id.* Officer Morgan's partner confirmed that Officer Morgan rolled down his window, had his firearm, and yelled "Police!" *See id.*

On April 16, 2026, the State of Minnesota, Hennepin County, filed a criminal complaint against Officer Morgan for Assault in the Second Degree with a Dangerous Weapon. In announcing the charges against Officer Morgan, the Hennepin County prosecutor asserted that Operation Metro Surge was a federal "occupation" and also conceded that the driver of the white car may have committed a crime.[5]

On June 9, 2026, Officer Morgan filed a notice of removal to federal court under 28 U.S.C. § 1455, invoking his status as a federal officer under 28 U.S.C. § 1442. Although at this point the case had already been removed to federal court, the State of Minnesota filed an "opposition" to removal on June 17, 2026, apparently intending to move the Court to remand the case back to state court. On June 22, the Court declined to summarily remand the prosecution and instead set the matter for an evidentiary hearing under § 1455(b)(5) on the question of removal. Dkt. No. 14. The United States now files this statement in support of removal.

## LEGAL STANDARD

For well over a century, the Supreme Court has "emphasized the need to safeguard the exercise of legitimate federal authority" through removal to federal

---

[5]    *See* Video posted by FOX 9 Minneapolis-St. Paul, Facebook, *Hennepin Cnty. prosecutors are charging an ICE officer with two counts of assault for a Feb. incident along Highway 62* (Apr. 16, 2026), https://www.facebook.com/fox9kmsp/videos/hennepin-county-prosecutors-are-charging-an-ice-officer-with-two-counts-of-assau/2018067005586548/.

court of state criminal prosecutions that implicate the operations of the federal government. *Arizona v. Manypenny*, 451 U.S. 232, 241 n.16 (1981); *see Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Tennessee v. Davis*, 100 U.S. 257, 262–63 (1879). Accordingly, federal law provides that a state criminal prosecution may be removed to federal court if it is asserted against "any officer . . . of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). To remove under that statute, a defendant files a notice of removal "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1455(a). The removal must be filed "not later than 30 days after the arraignment in the State court" and state all grounds for removal. § 1455(b)(1)–(2).

Between these statutes and the requirements of Article III, removal of state criminal proceedings has three substantive elements. First, the removing defendant must be the United States, a federal agency, a federal officer, or a person "acting under" a federal officer. § 1442(a)(1). Second, the suit must be "for or relating to any act under color of such office." *Id*. Third, the removing defendant must assert "a colorable federal defense." *Chevron USA Inc. v. Plaquemines Par., Louisiana*, 146 S. Ct. 1052, 1057–58 (2026) (quoting *Mesa v. California*, 489 U.S. 121, 129 (1989)); *accord United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).

On the "color of office" element, the Court has recently clarified that the "relating to" concept in section 1442(a)(1) "sweeps broadly" and can be indirect or lack

6

a strict causal relationship. *Chevron*, 146 S. Ct. at 1060. "[A] removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct." *Id.*; *see id.* at 1061 ("The ordinary understanding of 'relating to' requires a connection that is not 'tenuous, remote, or peripheral.'"). Thus, a defendant need only "plausibly allege[]" a relationship between the challenged conduct and the performance of federal duties. *Id.*

"For a defense to be considered colorable, it need only be plausible." *Todd*, 245 F.3d at 693. The defense need not even be "clearly sustainable." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Jefferson County v. Acker*, 527 U.S. 423, 432 (1999). In short, the proffered defense's "ultimate validity is not to be determined at the time of removal." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (citing *Mesa*, 489 U.S. at 129); *see Todd*, 245 F.3d at 693 ("[Section] 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate.").

So long as the defendant's claims are not "wholly insubstantial and frivolous," *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 (5th Cir. 2020), the standard for removal is not hard to satisfy. *Willingham*, 395 U.S. at 406 ("The federal officer removal statute is not 'narrow' or 'limited.'"). In evaluating (1) whether a defendant acted "under the color" of federal office; and (2) whether a defendant raised a "colorable federal defense," the district court must "credit the [defendant's] theory of the case" and determine only whether the defendant has made an "adequate threshold showing" for removal. *Acker*, 527 U.S. at 432; *see Griffin v. Optum, Inc.*,

175 F.4th 897, 902 (8th Cir. 2026) ("In evaluating the propriety of removal, we must credit the defendants' theory of the case."). Even when the state attempts to rebut the officer's allegations with evidence, the officer is not required to definitively "'exclud[e] the possibility that the suit is based on acts or conduct not justified by his federal duty' before removal." *Texas v. Kleinert*, 855 F.3d 305, 312 (5th Cir. 2017) (quoting *Osborn v. Haley*, 549 U.S. 225, 249 (2007)). "If, in opposing removal, the state contends that the federal officer was not acting in his official capacity but instead may have been on a frolic of his own, then the officer should have the opportunity to present his version of the facts to a federal court." *Id.* (cleaned up).

ARGUMENT

Accepting his theory of the case, as the Court must at this stage, Officer Morgan has readily met the low bar for removal here.

### I.    Officer Morgan is a Federal Officer.

Hennepin County properly concedes that Officer Morgan is a federal officer. Opp'n at 8 n.5. Officer Morgan works full time as a Deportation Officer for ICE, a federal agency. Therefore, Officer Morgan easily satisfies the first prong of the removal inquiry.

### II.   The State's Evidence Confirms Officer Morgan was Acting Under Color of his Office.

**A.** Although either would suffice for removal purposes, Hennepin County is prosecuting Officer Morgan not just for an act "relating to" the color of federal office, but "for" an act taken under "color" of federal office as part of Operation Metro Surge. An act is under "color" of federal office if it is related to an assertion of federal

8

authority. *See Willingham*, 395 U.S. at 409. Consistent with what Officer Morgan explained to local officers, this prosecution is for an act that Officer Morgan took while on duty working for ICE. *See* Dkt. No. 2 (PC Stmt.) at 3. Officer Morgan confirmed in his interview that he had been conducting surveillance for ICE in Minneapolis and, at the time of the incident, was "driving to the Whipple Building to end his shift." *Id.* His partner confirmed they were traveling "back to base, last call." *Id.* They were therefore on duty and performing their federal job functions.

While performing his duties, Officer Morgan took the act challenged in the State's prosecution: brandishing his service firearm in response to a reckless driver who posed a potential security threat. That act was under color of office because (as discussed in greater detail below) it established federal officer presence to de-escalate and control a threatening situation, and it was accompanied by Officer Morgan's express announcement of his law enforcement status. *Cf. Clark v. Clark*, 926 F.3d 972, 979 (8th Cir. 2019) (holding that it was not constitutionally unreasonable for an officer to point a gun at a suspect "for a few seconds" where "the situation was not fully under control," even if the suspect had surrendered); *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009) ("[C]ourts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police."); *McDonough v. Toles*, 476 F. Supp. 3d 882, 889 (D. Minn. 2020) (holding that a defendant "was acting under color of law" where he "announced himself as a police officer . . . most likely" to gain "compliance and to notify bystanders that [he] was acting pursuant to lawful authority"); *accord Thai v. Saul*, 804 F. App'x 485, 488 (9th

Cir. 2020); *Cooney v. Alberto*, No. 2:13-CV-01849 DMC, 2013 WL 6008300, at *3 (D.N.J. Nov. 12, 2013). Here, Officer Morgan was on duty and acted under the authority conferred on him as a federal law enforcement officer.

**B.** More than acting under "color" of office, Officer Morgan had authorization to use the gun in this way based on DHS policies and directives regarding the use of force; the law against interfering with a federal officer, *see* 18 U.S.C. § 111; 8 U.S.C. § 1357(a)(5); and the Fourth Amendment.[6]

A law enforcement officer's decision to use force is a matter of discretion. *See* DHS Policy at 5. The proper use-of-force analysis "requires careful attention to the facts and circumstances of each particular case" from the perspective of a reasonable officer who may need to make split-second judgments in rapidly developing, uncertain, and tense situations. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); DHS Policy at 2.

A variety of factors may be relevant to the use-of-force decision and are indeed present even based on the State's version of events. Relevant factors include: the severity of the crime that the officer is facing; whether there is an immediate threat to the safety of the defendant or to others; whether the suspect is actively resisting or evading arrest; the presence of other law enforcement officers, subjects, or bystanders; the apparent size or physical condition of the subject; the presence of weapons; and the perceived mental or emotional state of the subject. *Graham*, 490

---

[6]    Even if his actions violated law or policy, he still satisfies all the removal requirements. *See infra*, Section III(A).

10

U.S. at 396; DHS Policy at 2. Further, an important consideration is whether the suspect has forcibly assaulted or interfered with the officer while he was engaged in (or on account of) his official duties. *Id.* Indeed, the "[u]se of force is necessary when it is reasonably required to carry out the [officer's] law enforcement duties in a given situation." ICE Directive at 7. Relatedly, Title 8, Section 1357(a)(5) permits ICE agents to arrest individuals where there is probable cause of a federal crime such as interference with or assault on a federal officer.

ICE's use-of-force directive describes a five phase "continuum" of force ranging from officer presence (based on physical indicators) to deadly force. ICE Directive at 10–12. "The act of establishing a grip, unholstering, or pointing a firearm does not constitute a use of deadly force." DHS Policy at 8. Under ICE policy, officers should take efforts, when feasible, to de-escalate an encounter "by the use of communication or other techniques during an encounter to stabilize, slow, or reduce the intensity of a potentially violent situation." ICE Directive at 1, 7. Similarly, ICE employees must give a warning when feasible, considering factors such as whether a delay is likely to result in the commission of a crime. DHS Policy at 4; ICE Directive at 10; *Garner*, 471 U.S. at 11–12. But ICE officers have no duty to retreat to avoid the reasonable use of force, and they are not required to wait for an attack before using reasonable force to stop a threat. DHS Policy at 3; *Monroe v. City of Phoenix*, 248 F.3d 851, 862 (9th Cir. 2001) ("Surely [an officer is] not required to wait and be seriously injured or killed before exercising his judgment and bringing the situation under control."), *overruled on other grounds by Acosta v. Hill*, 504 F.3d 1323 (9th Cir. 2007).

"In an exigent situation for self-defense or defense of another, DHS LEOs [law enforcement officers] are authorized to use any available object or technique in a manner that is objectively reasonable in light of the circumstances." DHS Policy at 4. In short, ICE "LEOs should seek to employ tactics and techniques that effectively bring an incident under control while promoting the safety of LEOs and the public, and that minimize the risk of unintended injury or serious property damage." DHS Policy at 3. And critically, given the highly complex nature of law enforcement encounters, different ICE officers "may have different responses to the same situation, any of which may be both reasonable and necessary." ICE Directive at 7; DHS Policy at 2; *cf.* Graham, 490 U.S. at 396.

**C.** Under these laws and policies, Officer Morgan's challenged act—brandishing his service firearm while performing his duties—was authorized for at least two reasons.

**i.** The conceded effort to drive in such a way that physically blocked Officer Morgan's vehicle—and indeed in a way that nearly forced the on-duty Officer Morgan off the road on his way back to his base in response to a supervisory order—gave Officer Morgan probable cause to believe the other driver was committing interference with and assault on a federal officer. *See Kaley v. United States*, 571 U.S. 320, 338 (2014) ("Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." (cleaned up)). As a federal officer, Officer Morgan was authorized to address such violations with a show of force. *Shannon v. Koehler*, 616 F.3d 855, 863 (8th Cir. 2010)

12

("[T]here can be no doubt that officers are permitted to use force when their safety is threatened."). Because Officer Morgan had probable cause to believe the driver was committing a crime in his presence, he was entitled to use force to deescalate and control the situation.

A defendant violates 18 U.S.C. § 111(a)(1) if he "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title when engaged in or on account of the performance of official duties." "'Engaged in . . . performance of official duties' is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own." *United States v. Heliczer*, 373 F.2d 241, 245 (2d Cir. 1967). "The scope of what the agent is employed to do is not defined by whether the officer is abiding by laws and regulations in effect at the time of the incident, nor is the touchstone whether the officer is performing a function covered by his job description." *United States v. Street*, 66 F.3d 969, 978 (8th Cir. 1995).[7]

---

[7]    *See, e.g.*, *United States v. Hoffer*, 869 F.2d 123 (2nd Cir. 1989) (employee shot and injured a man who stole her government car; court found she was performing her duty at the time, where she had completed surveillance work but remained on-call); *United States v. Stephenson*, 708 F.2d 580 (11th Cir. 1983) (FBI agent was engaged in the performance of her duties where she was traveling to work and attempting to prevent theft of federal property); *United States v. Boone*, 738 F.2d 763 (6th Cir. 1984) (judge going to law library was "discharging her mission as a federal appeals court judge at the time of the attack"); *United States v. Clemons*, 32 F.3d 1504 (11th Cir. 1994) (agent shot while sitting in his federal car while stopped to get something to eat on his way to work meeting was in his official capacity).

13

Section 111(b) includes an enhanced penalty when a deadly or dangerous weapon such as a car is used. Numerous courts have held that driving a car at federal officers, or in a way that could cause a collision with officers, qualifies as an offence under section 111. *See, e.g.*, *United States v. Yates*, 304 F.3d 818, 823 (8th Cir. 2002) (holding that section 111 conviction does not require conduct be penalized as only "simple assault" where suspect accelerated vehicle toward federal officers, forcing them to "swerve," but never made physical contact with them); *United States v. Davidson*, 567 F. App'x 90, 94–95 (3d Cir. 2014) (holding that reasonable jury could find that driver violated section 111 when he drove his truck toward CBP officers and only stopped "after an officer drew his gun and pointed it at the vehicle"); *United States v. Gauvin*, 173 F.3d 798, 805 (10th Cir. 1999) (section 111 violation was supported by swerving car to block approaching officer). The suspect needs only "to intend to use the car." *United States v. Gumbs*, 964 F.3d 1340, 1348 (11th Cir. 2020); *United States v. Garcia*, 868 F.2d 114, 116 (4th Cir. 1989); *United States v. Wheeler*, 831 F. App'x 53, 55–56 (3d Cir. 2020); *see Galvan v. United States*, 318 F.2d 711, 712 (9th Cir. 1963) (identifying "a Cadillac" as deadly weapon).

The State claims the driver did not know Officer Morgan was a federal officer, but there is no requirement that "an assailant be aware that his victim is a federal officer" to commit an offense under § 111. *United States v. Feola*, 420 U.S. 671, 684 (1975); *cf. United States v. Carlone*, 603 F.2d 63, 64 (8th Cir. 1979) (defendant convicted of assault under section 111 for (among other things) swerving at officers, causing them to swerve and brake, where defendant did not know they were federal

14

officers). Given the probable cause to believe the driver committed a federal crime and may well have intended to do so again, Officer Morgan was justified in making a show of force. *Graham*, 490 U.S. at 396. Indeed, as discussed above, ICE policy identifies interference with and assault of a federal officer as factors in the use-of-force analysis. DHS Policy at 2 n.3; *cf. Georgia v. Heinze*, 637 F. Supp. 3d 1316, 1324–25 (N.D. Ga. 2022) (officers satisfied color of office requirement because—crediting defense's theory—defendants fired weapons after suspect pointed gun at them, violating section 111).

Here, Officer Morgan's conduct was in response to his reasonable belief that the driver was committing an assault. He quickly brandished his weapon while verbally identifying himself as a member of law enforcement and establishing officer presence. *United States v. Drayton*, 536 U.S. 194, 205 (2002) ("That most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon."). Beyond that, the use of his service weapon is best understood as an effort at de-escalation and as part of a warning to an assailant to stand down from further threatening actions. *Loch v. City of Litchfield*, 689 F.3d 961, 967 (8th Cir. 2012) (officer gave reasonable warnings before shooting by pointing gun and ordering suspect to ground). Deportation Officer Morgan's act—using his service weapon as part of his effort to safely but decisively gain control of a tense situation where Officer Morgan, at a minimum, had probable cause to believe an unknown individual was committing an assault and interference against him by

15

dangerously swerving in front of Officer Morgan on a highway. *Clark*, 926 F.3d at 979 (pointing gun at suspect in car to gain control was reasonable).

That Officer Morgan might have had other means to announce his presence does not make the means used here unreasonable under the Fourth Amendment. *See Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." (citation and internal quotation omitted)). Consistent with the Fourth Amendment, Officer Morgan could have reasonably concluded in response to escalating circumstances that brandishing his weapon was the most effective, efficient, and necessary way to end a potentially violent encounter. *Graham*, 490 U.S. at 396–97 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . [and] must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."); *see New York v. Tanella*, 374 F.3d 141, 151 (2d Cir. 2004).

**ii.** The exigencies created by the driver's swerving also triggered Officer Morgan's duties to respond to quickly evolving situations presenting risk of harm to himself and others. *See, e.g.*, 28 U.S.C. § 1442(a), (c)(1) and (2). In such a situation, agency policy allowed for a show of force by Officer Morgan. The events here unfolded rapidly: only seconds elapsed between the second swerve and Officer Morgan's show

16

of force. It was reasonable for Officer Morgan to perceive the conduct as an ongoing, persistent threat to himself and the public, particularly in light of the repeated nature of the driver's actions. *Cf. Graham*, 490 U.S. at 396–97. The Court should credit Officer Morgan's plausible theory that he is prosecuted "for" an act under color of law.

**D.** At the very least, the conduct that Officer Morgan is being prosecuted for was "relat[ed] to" his federal duties. 28 U.S.C. § 1442(a)(1). Thus, even if his conduct was not done "under color of" his office, removal would still be appropriate. *Chevron*, 146 S. Ct. at 1063 ("[Section 1442(a)(1)] contemplates removal of suits against officers or their agents for acts that were not done under color of their offices, so long as the suits 'relat[e] to' such acts."). As the Supreme Court has recently taught, "the phrase 'relating to' sweeps broadly. One thing can relate to another even if the connection is indirect. One thing can relate to another even if it was not specifically designed to affect it. And, one thing can relate to another even without a strict causal relationship." *Id.* at 1060 (cleaned up). This is a very low bar, easily met here. There is no dispute that Officer Morgan was on duty, driving the vehicle he was assigned to drive while on duty, traveling to a location he was ordered to travel to, and using his service weapon. Officer Morgan would not have been on the road but for his federal orders. *See* Dkt. No. 2 (PC Stmt.) at 2. The connection here is not "tenuous, remote, or peripheral," *Chevron*, 146 S. Ct. at 1061, but the kind of work that a federal officer is called to do, directly connected to the work he was doing.

The second prong of the federal officer removal statute is met here.

17

### III.    The State's Evidence Confirms the Existence of Colorable Federal Defenses.

The facts demonstrate that multiple colorable federal defenses are available. Accordingly, the prosecution must remain in federal court so those defenses can be considered on the merits in a federal forum at the appropriate time.

**A.** Officer Morgan has a "colorable" defense of immunity under the Constitution's Supremacy Clause. *Kleinert,* 855 F.3d at 312. Supremacy Clause immunity applies if two elements are met. *In re Neagle,* 135 U.S. 1 (1890). First, the employee must be prosecuted for an act he was authorized to perform under federal law. *Id.* at 75; *Wyoming v. Livingston,* 443 F.3d 1211, 1222 (10th Cir. 2006). The necessary authority may be "derived from the general scope of [the employee's] duties." *Neagle*, 135 U.S. at 59. Second, the employee's act must have been "necessary and proper." *Id.* at 75. This requires an "objectively reasonable belief" that the defendant acted properly in the execution of his or her federal duty under the circumstances. *Kleinert*, 855 F.3d at 314–15; *see Clifton v. Cox,* 549 F.2d 722, 728 (9th Cir. 1977); *Livingston,* 443 F.3d at 1221. The court must view the circumstances as they appeared to the defendant, *Tanella,* 374 F.3d at 147, rather than "the more subtle and detailed facts later presented to a court." *Kleinert*, 855 F.3d at 318 (citing *Livingston* and *Tanella*). Further, as part of the "necessary and proper" test, some circuits, including the Eighth Circuit, have inquired into the officer's subjective state of mind. *Reed v. Madden*, 87 F.2d 846, 852 (8th Cir. 1937); *but see Livingston*, 443 F.3d at 1220.

18

The key point for Supremacy Clause immunity is that the question is not whether the employee's act was "in fact necessary or in retrospect justifiable, only that he reasonably thought it to be." *Clifton*, 549 F.2d at 724. Mere "mistake in judgment" does not "subject a federal agent to state court prosecution." *Kentucky v. Long*, 837 F.2d 727, 745 (6th Cir. 1988). Even violations of law or policy, or decisions made in difficult situations lacking clear answers, may be protected by the Supremacy Clause. A finding, for example, that an officer violated a constitutional provision would not per se defeat Supremacy Clause immunity. *See Clifton*, 549 F.2d at 725–28 (despite court's undisturbed finding that FBI agent violated federal statute and alleged violations of multiple federal laws and regulations, FBI agent was entitled to immunity); *Petition of McShane*, 235 F. Supp. 262, 270 (N.D. Miss. 1964) (protecting decision of official who was presented with circumstances that could change rapidly and that forced him to make ultrafine distinctions); *In re Lewis*, 83 F. 159, 160 (D. Wash. 1897) (granting immunity to officers who conducted illegal search and seizure in excess of scope of warrant, which itself was illegally issued). In short, where a federal officer acted on a reasonable good faith belief in the propriety of his actions, strict adherence to constitutional standards and agency policies is not invariably required to secure removal and, eventually, dismissal of a duty-related prosecution.

Both prongs are established here. The driver's conduct forced Officer Morgan to make a complex decision in tense, rapidly unfolding, and uncertain circumstances. *Graham*, 490 U.S. at 396. For the reasons discussed above, Officer Morgan's conduct

was reasonably necessary, proper, and justifiable for purposes of Supremacy Clause immunity; and Officer Morgan further explained to local authorities (*see* Dkt. No. 2 (P.C. Stmt.) at 3) that he took the challenged act because he feared for his safety and that of his partner, demonstrating the kind of subjective belief that sustains Supremacy Clause immunity.

The evidence easily clears the low bar erected to ensure the protection of federal employees and the federal government in local criminal prosecutions. Again, at the removal stage, the question is not whether Officer Morgan has a "clearly sustainable" or "valid" defense; it is only whether the defense is "colorable." *Chevron*, 146 S. Ct. at 1058; *Acker*, 527 U.S. at 432; *cf. Mesa*, 489 U.S. at 128–29 (explaining that validity of defense is entirely separate from question of whether defense is colorable).

The necessary "colorable" defense is readily established where, as here, the prosecution is for a law enforcement officer's use of force in the course of his duties. In *Kleinert*, for example, the Fifth Circuit found removal jurisdiction easily satisfied where the state sought to prosecute a federal officer for actions he took as he tried to arrest a decedent, and federal law authorized officers like Kleinert to arrest upon probable cause of a federal crime. Those same allegations satisfied the colorable federal defense requirement: "Because Kleinert plausibly alleged that he was acting as a federal officer at the time of the shooting, he sufficiently asserted a colorable federal defense." *Kleinert*, 855 F.3d at 313; *see Georgia v. Heinze*, 637 F. Supp. 3d at

20

1325 (similar analysis justifying removal of prosecution arising from shooting). Officer Morgan, too, colorably establishes a claim to Supremacy Clause immunity.

**B.** Officer Morgan has other "colorable federal defenses" independently supporting removal. Removal is appropriate if in the "mass" of the case is even a "single . . . ingredient" of a "federal character." *Mesa*, 489 U.S. at 129 (quoting *Mayor of Nashville v. Cooper*, 73 U.S. 247, 252 (1867)); *see id.* at 127–30 (explaining that in *Davis*, "[p]roof that Davis was not a thief depended on the federal revenue laws and provided the necessary predicate for removal"). Here, the case involves additional colorable defenses, such as defense of self and others, that are federal in character given Officer Morgan's federal law enforcement role and the inherent issues of federal law and policy regulating his conduct. *See* Dkt. No. 1 (Notice of Removal) at 8; *New York v. Tanella*, 239 F. Supp. 2d 291, 297 (E.D.N.Y. 2003) ("[T]he allegation of self-defense by a federal officer who is performing his duty implicates federal law and 'provide[s] the necessary predicate for removal.'" (quoting *Mesa*, 489 U.S. at 127)); *Maryland v. Soper,* 270 U.S. 36, 42 (1926) (holding that "removals of prosecution on account of acts done in enforcement of [federal] laws or under color of them properly include those for acts committed by a federal officer in defense of his life, threatened while enforcing or attempting to enforce the law"); *Mesa*, 489 U.S. at 129–30 (noting "obvious presence of a federal question"—"the proper interpretation of" a federal statute—provided necessary defense for removal jurisdiction); *cf. Magnin*, 91 F.3d at 1428 ("At least part of Smith's defense is that he acted within the scope of his federal

21

duties, that what he did was required of him by federal law, and that he did all federal law required. That defense raises a federal question, which justifies removal.").

Further, sound policy guided by principles of federalism supports removal jurisdiction on these facts. In enacting the criminal removal statute, central to "Congress' concern [was] local hostility to federal authority." *Mesa,* 489 U.S. at 140 (Brennan, J., concurring); *Morgan v. Washington*, 212 F. App'x 606, 608 (9th Cir. 2006). This concern is heightened in the context of fact-intensive cases like law enforcement uses of force, particularly in politically charged contexts, which can lend themselves to harassing prosecutions. *Cf. In re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 451 (E.D.N.Y. 2004) ("Because government contractor cases are freighted with factual findings, *Boyle,* while laying down a substantive rule, may be readily circumvented by state courts unsympathetic to the defendants.").

These concerns are before the Court and further support removal because the State has been forthright about why it is bringing this prosecution: opposition to the federal government's purported "federal occupation" of Minnesota during Operation Metro Surge and hostility to federal immigration enforcement. Reinforcing this understanding is the Hennepin County Attorney's association with Fight Against Federal Overreach ("FAFO"). *See* https://www.federaloverreach.org/ (last visited July 14, 2026). In this circumstance, jurisdiction in federal court is manifestly appropriate and constitutional. *Mesa*, 489 U.S. at 140 (Brennan, J., concurring).

22

## IV.    The State's Arguments for Remand Are Unpersuasive.

The State's position relies on several fundamental mistakes that defeat their arguments for remand. *First*, the State misunderstands the removal standard and analysis. The State incorrectly suggests that the Court is not required to credit Officer Morgan's theory of the case, arguing that the relevant language in *Acker* simply tells courts not to decide the merits. *See* Opp'n at 8 n.4. That is wrong. The *Acker* Court, after noting that "demanding an airtight case on the merits in order to show the required causal connection" would "defeat the purpose of the removal statute," said, "Accordingly, we credit the judges' theory of the case for purposes of both elements of our jurisdictional inquiry." *Acker*, 527 U.S. at 432; *see also Griffin*, 175 F.4th at 902 ("In evaluating the propriety of removal, we must credit the defendants' theory of the case." (citing *Acker*, 527 U.S. at 432)).

The State mistakes the import of the Supreme Court's comment in *Willingham* that in a criminal case "a more detailed showing might be necessary." Opp'n at 8 n.4. Nothing about that language undermines either (i) the Supreme Court's clear command to credit Officer Morgan's theory, or (ii) the fact that removal requires only a "colorable" defense. Rather, any need for "a more detailed showing" simply requires that the defendant describe the events with facts rather than, for example, conclusory allegations or characterizations. *See* 28 U.S.C. § 1455 (requiring "a short and plain statement of the grounds for removal"); *cf. Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) ("[A] defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements

23

for removal jurisdiction."). Such a showing is made here even considering only the State's affidavit and incorporated video showing the other driver's reckless conduct.

Further, the State argues that the "color of office" test incorporates a "causal connection" standard. Opp'n at 7–9. But as discussed above, *supra* p. 6, 16–17, in *Chevron* the Supreme Court explained that that is not the test. Although *Chevron* was decided months before Hennepin County's opposition to the notice of removal was filed, the Supreme Court's decision—relevant here—is not cited in the prosecution's brief opposing removal.

Finally, in an attempt to raise the bar for removal above what the law requires, the State suggests that Officer Morgan must establish that removal is warranted by a preponderance of the evidence. Opp'n at 7 (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010)). But the State's own precedent explains that, in a notice of removal, the defendant need only *allege* facts sufficient to plausibly establish jurisdiction. Opp'n at 7–8; *Leite*, 749 F.3d at 1121. Officer Morgan met that standard here. True, at the hearing, Officer Morgan will need to come forward with "competent proof" that the removal standard has been met. *Id.* at 1122. But that too is a very low bar, because the evidence only needs to show a colorable federal defense and that his conduct is related to his federal duties. *See id.* at 1123 (holding that affidavits submitted by defendant were sufficient).

*Second*, the State incorrectly suggests that, in driving back to headquarters, Officer Morgan was not performing his job duties. *See* Opp'n at 11–12. Officer Morgan was indisputably performing his job duties and protected by federal law. *See, e.g.*,

24

*supra* n.7 (citing cases); *Neagle*, 135 U.S. at 55–57 (explaining judge traveling between courts was performing duty and favorably citing case law regarding federal agents traveling back to headquarters).

*Third*, the State continually and incorrectly emphasizes that Officer Morgan was allegedly driving "illegally" on the highway shoulder. Opp'n at 1–3, 12, 16, 18. Supremacy Clause immunity "does not require that federal law explicitly authorize a violation of state law." *Livingston*, 443 F.3d at 1227 ("The Supreme Court found federal authorization . . . in *Thomas* even though the federal . . . provision did not authorize violation of Ohio's notice requirement.").

Further, that Officer Morgan was on the shoulder is a red herring. The analysis must instead focus on the conduct that the State has actually charged: assault based on the brandishing of Officer Morgan's service weapon. The question here is whether Officer Morgan's use of force was reasonably necessary in response to a driver's dangerous and reckless escalation of the situation. For this reason, the many traffic cases that the State relies on are irrelevant. Opp'n at 16–18. Whether remand was appropriate in cases about negligent driving, for example, does not bear on whether removal is appropriate for a different kind of prosecution. Similarly, the State incorrectly suggests no federal crime involving this traffic incident could have occurred where Officer Morgan was driving "illegally" on the shoulder. But as shown above, the other driver's conduct may have implicated § 111, regardless of any traffic offense purportedly committed by Officer Morgan.

*Fourth*, the State is mistaken on how to analyze use-of-force incidents. The State incorrectly suggests (Opp'n at 4–5) that the events leading up to Officer Morgan's encounter with the reckless driver are categorically irrelevant. *See Barnes v. Felix*, 605 U.S. 73, 80 (2025) ("Most notable here, the 'totality of the circumstances' inquiry into a use of force has no time limit."). Further, the State attaches too much importance to the fact that the driver, after recklessly forcing Officer Morgan nearly off the road, drove ahead and produced a momentary degree of separation from Officer Morgan and his partner. *See* Opp'n at 16. Courts have recognized Supremacy Clause immunity in the fatal shootings of suspects who, like the violent driver here, were arguably moving away from officers but nevertheless still presented an imminent threat. *See Clifton*, 549 F.2d at 729; *Tanella*, 374 F.3d at 151; *cf. Molina-Gomes v. Welinski*, 676 F.3d 1149, 1153 (8th Cir. 2012) (affirming grant of qualified immunity to officer who used deadly force against fleeing subject).

Finally, the State argues that Officer Morgan's conduct was unreasonable because the "victims" were "predictably provoked by the defendant's decision to drive illegally on the shoulder in order to bypass queuing motorists." Opp'n at 16. That it might be "predictable" for an annoyed driver to suddenly cut off another vehicle on the highway does not make it any less reckless. Moreover, the State's argument is inconsistent with Supreme Court law, which has rejected the argument that an officer's initial alleged provocation is relevant in determining whether an officer's later use of force was reasonable. *See County of Los Angeles v. Mendez*, 581 U.S. 420, 429 (2017). In any event, the State's fact-bound arguments for why Officer Morgan's

26

act was wrongful are not properly before the Court at the removal stage. *See Kleinert,* 855 F.3d at 313. For example, the State argues that, rather than raise his firearm, Officer Morgan should have flashed his badge to get the emotionally disturbed driver to stop his dangerous conduct. Opp'n at 16. The State also disputes aspects of the events included in Officer Morgan's statement of removal, such as where Officer Morgan was going and what he was going to do. *See* Opp'n at 6. Those disputes are premature. "Because the standard for federal officer removal tests only the plausibility of the officer's allegations, the State's arguments that removal is unavailable because, in its view, [Officer Morgan] will not ultimately prevail are unavailing." *Kleinert,* 855 F.3d at 313.

## V.     CONCLUSION

This Court should accept jurisdiction of this case under 28 U.S.C. § 1442 and deny the Hennepin County Attorney's remand motion.

Dated: July 14, 2026

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Torts Branch

PAUL E. WERNER
Assistant Director
Civil Division, Torts Branch

SIEGMUND F. FUCHS
Senior Trial Counsel
Civil Division, Torts Branch

/s/ Paul C. Quast
Paul C. Quast
Colorado Bar No. 49154
Senior Trial Attorney
/s/ Jonathan R. Myers
Jonathan R. Myers

27

D.C. Bar No. 1601183
Trial Attorney
U.S. Department of Justice
Constitutional Torts Staff
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
202-256-9250
paul.c.quast@usdoj.gov
jonathan.r.myers@usdoj.gov

*Attorneys for Interested Party United States of America*

28