**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**CASE NO. 26-cr-112 (NEB)**

State of Minnesota,

    Plaintiff,        **PRE-HEARING BRIEF**

v.

Gregory Donnell Morgan, Jr.,

    Defendant.

The parties gathered for a status conference on July 13, 2026, ahead of the evidentiary hearing. The Court requested briefing on two key issues; first, Mr. Morgan's request to reschedule the hearing; and second, whether witnesses should testify at the hearing. The parties were directed to submit a prehearing brief addressing these issues by July 15, 2026, and a reply due July 17, 2026. Agent Morgan addresses these issues below.

I.  **THE COURT SHOULD GRANT A CONTINUANCE TO ALLOW AGENT MORGAN TO CALL NECESSARY WITNESSES AT THE EVIDENTIARY HEARING.**

Agent Morgan asks this Court to continue the evidentiary hearing. The Court has discretion to grant a continuance, and should do so here for good reason. Agent Morgan intends to call his ICE partner that was in the vehicle with him, T.B, and B.J. to testify live at the evidentiary hearing currently scheduled for

1

July 20, 2026 at 9:00 a.m. Agent Morgan's partner is a necessary fact witness to the events leading up to, during, and after the incident with the aggressive Cadillac, and who we anticipate would provide evidence on all three substantive elements, especially the objective reasonableness requirements for the necessary and proper analysis on the third element (colorable federal defense – Supremacy Clause Immunity). As we tried to explain during the status conference, securing witnesses and working out the logistics with the federal government has proved challenging and these things take time for approvals, logistics, etc. As of this submission, we do not yet have confirmation for Agent Morgan's ICE partner's appearance at the July 20, 2026, hearing.

Turning to the other necessary witnesses, T.B. and B.J.: what Agent Morgan was seeing and perceiving, what T.B. and B.J. were seeing and perceiving, and how T.B. and B.J. were acting toward the federal agents at the time of prior to and during and after the incident all go to the objective reasonableness of Agent Morgan's actions. The statements they made to law enforcement do not make up all of the facts relevant to Agent Morgan's production of evidence for the record at the evidentiary hearing. We anticipate T.B. and B.J. will give highly relevant testimony including but not limited to what they did and did not observe concerning the firearm, the condition of the Cadillac's windows, the driver's multiple instances of aggression toward the federal officers, the assault of and interference with federal officers, among other

2

things. *See* FRE 404(a)(2); 607. All of this testimony is directly relevant to Agent

Morgan's decision on use of force, and the objective reasonableness of his belief

that the act at the time was "necessary and proper" in the execution of his federal

duties under the totality of these circumstances. *Texas v. Kleinert*, 855 F.3d 305,

319 (5th Cir. 2017) ("In analyzing objective reasonableness, courts must evaluate

the circumstances as they appear to federal officers at the time ... rather than the

more subtle and detailed facts later presented to a court."); *Barnes v. Felix*, 605

U.S. 73, 80-81 (inquiry into the objective reasonableness of police force requires

analyzing the "totality of the circumstances." Most notable here, the "totality of

the circumstances" inquiry into a use of force has no time limit. Of course, the

situation at the precise time of the shooting will often be what matters most; it is,

after all, the officer's choice in that moment that is under review. But earlier facts

and circumstances may bear on how a reasonable officer would have understood

and responded to later ones. […] Prior events may show, for example, why a

reasonable officer would have perceived otherwise ambiguous conduct of a

suspect as threatening. Or instead, they may show why such an officer would

have perceived the same conduct as innocuous. The history of the interaction, as

well as other past circumstances known to the officer, thus may inform the

reasonableness of the use of force."). *See also e.g. United States v. Bordeaux*, 570

F.3d 1041, 1049 (8th Cir. 2009) (evidence of prior bad acts of a victim are

admissible under Rule 404(b) to establish the defendant's state of mind and the

3

reasonableness of the defendant's use of force; and evidence of victim's violent character is also admissible under Rules 404(a)(2) and 405(a) as pertinent in a self-defense claim to show victim was aggressor.)  Live witness testimony from T.B. and B.J. is necessary to establish these things. *See e.g. New York v. Tanella*, 374 F.3d 141, 150 (2d Cir. 2004) (witness testimony essential to establish objective component of reasonableness test in federal removal case).

In addition to that, Agent Morgan as a criminal defendant has constitutional rights of due process, U.S. Const. Amends. V, XIV and Minn. Const. Art. 1 sec. 7, as well as all of the rights under U.S. Const. Amend. VI and Minn. Const. Art. 1, sec. 6 to compulsory process, to be confronted with witnesses against him, and to present a complete defense.

Given the extraordinary nature of this case and the high stakes for Agent Morgan, the state's actions in hiding witnesses and now refusing to cooperate in producing them is a due process violation. "A criminal defendant has a right to attempt to interview the victims without interference from the prosecution." *State v. Mussehl*, 408 N.W.2d 844, 846 (Minn. 1987). In *State v. Mussehl,* the Minnesota Supreme Court disapproved of letters sent by the prosecution that went beyond advising the witnesses of their right to decline interviews and included a discussion about the defense attorney's obligations. *Id*. In this case, we have a state prosecution that did worse than that - it purposely interfered with our ability to defend and prepare the case by actively concealing T.B. and B.J.,

4

acting in secret through *ex parte* proceedings, and refusing to cooperate with the defense in meaningfully producing them.  *See* Doc. 13, 13-1, 17, 17-1. "Disparaging defense counsel by calling them "dangerous and bulldogs" and "hounds" has the clear potential to impede defense counsel's ability to investigate the case. Further, to the extent that the State pressured Fowler not to speak with the defense team, that conduct also had the potential to interfere with Jenkins' access to witnesses." *State v. Jenkins*, 782 N.W.2d 211, 234 (Minn. 2010). In this state prosecution, at the omnibus hearing, the state suggested to the district court that it could not trust defense counsel with their information as part of the basis for operating *ex parte* with a prosecutor certificate, as well as their continued objection to a protective order. They will not provide their original *ex parte* communication or *ex parte* order. They maintain contact with T.B. and B.J. but will not provide current contact information, in spite of multiple defense requests for it. By operating in secret, delaying and continuing to fight about witness disclosures, the state has prejudicially impeded Agent Morgan's investigation of the case, his ability to prepare for the evidentiary hearing, and adequately prepare his defense all in violation of Agent Morgan's constitutional to due process. *See e.g. State v. Jenkins*, 782 N.W.2d 211, 234 (Minn. 2010) (citing *Mussehl,* 408 N.W.2d at 847).

If the Court proceeds with the evidentiary hearing Monday, without Agent Morgan's ability to present live witness testimony from T.B. and B.J., Agent

5

Morgan's right to compulsory process and to present evidence of a colorable

federal defense (including Supremacy Clause immunity) is compromised

severely. "Few rights are more fundamental than that of an accused to present

witnesses in his own defense. Indeed, this right is an essential attribute of the

adversary system itself. […] The right to offer testimony is thus grounded in

the Sixth Amendment even though it is not expressly described in so many

words: The right to offer the testimony of witnesses, and to compel their

attendance, if necessary, is in plain terms the right to present a defense,

the right to present the defendant's version of the facts as well as the

prosecution's to the jury so it may decide where the truth lies. Just as an accused

has the right to confront the prosecution's witnesses for the purpose of

challenging their testimony, he has the right to present his own witnesses to

establish a defense. This right is a fundamental element of due process of

law." *Taylor v. Illinois*, 484 U.S. 400, 408–09 (1988) (cleaned up/citations omitted).

Finally, it is worth nothing that this is *not* a continuance based upon a lack

of preparedness. Agent Morgan, through his defense team, has made substantial

efforts to conduct a thorough investigation in this case from the start. However,

from the beginning of this case via an *ex parte* proceeding in the state district

court, the state prosecution has thoroughly hampered Agent Morgan's ability to

quickly conduct any semblance of a proper defense investigation into the heart of

the state's prosecution state law claims, which includes an investigation into

these two individuals, an interview (at least an attempt), and the inspection of the Cadillac.

The history of state's *ex parte* proceedings in state district court, the prosecutor certificate designed to keep these witnesses secret, and the state's battle to delay disclosure of those individuals are chronicled in my prior correspondence to this Court. *See* Doc. 13, 13-1, 17, 17-1. As was mentioned during the status conference on July 13, 2026, the state just provided the defense with unredacted discovery that identified accusing witnesses T.B. and B.J. Monday July 6, 2026, pursuant to a protective order from Judge Scoggin issued *over strong objections* from the state. Despite our discovery demands, the state prosecutors *still* have not provided any updated contact information for these witnesses, despite information in discovery indicating that these two were moving. Yet we are told that these prosecutors remain in contact T.B. and B.J., according to the prosecution team, most recently to give them information about the release of the unredacted discovery to the defense pursuant to an order requiring them to do so. The state prosecutors claim to have talked to them about the Cadillac, but avoided asking a critical question – "were the windows tinted at the time?" We had been told for weeks that there were witness interview summaries, yet none were produced until today, Wednesday July 15, 2026 at 2:35 p.m.

All of this to say, at first opportunity beginning the morning of July 6, 2026, Agent Morgan's defense team diligently worked up this part of the investigation. However, even with multiple entities attempting service and to locate the vehicle, no one has been able to effect service or locate the Cadillac.[1] At this point, a continuance is necessary *not* as a result of lack of preparation and coordination of a hearing by the defense, but as a direct and foreseeable result of these state prosecutors choosing to operate in secret with these witnesses/Cadillac until forced to give the information by court order on July 6, 2026.

Finally, we have now received a notice of appearance and correspondence from an attorney, John Marti,[2] indicating that he represents these two witnesses. Doc. 27, 28.  Mr. Marti did not oppose their appearance at an evidentiary hearing if they are deemed necessary. Doc. 28. Rather, he asked for a continuance in the event they are necessary to accommodate their appearance, since they are leaving the country. Doc. 28. Mr. Marti sent all counsel non-filed correspondence indicating the same, without any objection to their presence but indicating a continuance is necessary because T.B. and B.J. are unavailable on July 20, 2026 due to travel plans. Mr. Marti's input concerning his clients adds another substantial reason for this Court to properly continue the evidentiary hearing.

---

[1] T.B. answered a process server via Ring camera, but refused to come to the door to accept service. We believe T.B. and B.J. will continue to attempt to dodge service.
[2] Mr. Marti has not agreed to accept service on behalf of his clients, and we understand that T.B. told process servers that his lawyer told him that subpoenas were cancelled which is not true.

The Eighth Circuit reviews a district court's decision to deny a request for continuance in a criminal case for an abuse of discretion. *United States v. Moe*, 536 F.3d 825, 831 (8th Cir. 2008). "We will reverse a district court's denial of a defendant's request for a continuance only if the district court abused its discretion and its decision prejudiced the defendant." *Id.* We could not locate any cases applying a different standard as pertains to a federal officer removal proceeding, where the federal officer is a criminal defendant as we have here. Nor could we locate any cases interpreting what a "prompt" evidentiary hearing means, or when after a continuance a hearing is no longer considered prompt.  In any event, the eighth circuit determines whether the district court abused its discretion "by looking at the particular circumstances of the case. Specifically, we ask "whether counsel had sufficient time to prepare for trial; whether counsel's conduct at trial showed that he was well prepared; and whether the court's refusal to grant a continuance prejudiced the defendant." *United States v. Keepseagle*, 30 F.4th 802, 815 (8th Cir. 2022).

Here, the state prosecution is not harmed by resetting this evidentiary hearing.  Conversely, Mr. Morgan is in the fight of his life for his freedom and career. His basis for requesting continuance is a direct result the state's relentless attempts to keep these witnesses and the Cadillac a secret as long as they could. For all of these reasons, a continuance is appropriate.

9

II.    **AGENT MORGAN SEEKS LIVE WITNESS TESTIMONY FROM NECESSARY WITNESSES TO MAKE HIS THRESHOLD SHOWING**.

"More than a century ago, in *Neagle,* 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55, the Supreme Court recognized the Supremacy Clause as a source of protection for federal agents facing state criminal charges for actions taken in the course of their duties. *Idaho v. Horiuchi*, 253 F.3d 359, 365 (9th Cir.). We agree with the United States that the State's own evidence confirms that Agent Morgan was acting under color of his office (Doc. 26 8-9) and the existence of colorable federal defense (Doc. 26 19 – 20) in this case. And the law requires only that Agent Morgan provide "competent evidence" at the evidentiary hearing. "The right to removal is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court[.]  To qualify for removal, a defendant must, among other things, raise a colorable defense arising out of [the defendant's] duty to enforce federal law[.] For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate. *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001) (citing *Mesa v. California* 489 U.S. 121 (1989) and *Willingham v. Morgan*,  395 U.S. 402 (1969) (internal citations/quotations omitted). Agent Morgan need not prove his federal defense will be successful  just that it be

'colorable.' *Alabama v. Acker*, 527 U.S. 423, 431 (1999).  Federal courts must credit the removing party's theory of the case for purposes of determining if a federal officer both acted "under color of office" and raised "a colorable federal defense." *Id*, at 432 ("Accordingly, we credit the judges' theory of the case for purposes of both elements of our jurisdictional inquiry[.]"). This is a low bar to meet a jurisdictional threshold, not a "preponderance" standard as was claimed by the state. *Id*.; *see also* Doc. 26 at p. 24.

Agent Morgan intends to make his threshold showing by calling necessary witnesses, as discussed earlier, and may submit affidavits, exhibits, and/or other proof at the hearing. Credibility of evidence is best assessed through in person witness testimony, in particular for T.B. and B.J., who have been repeatedly concealed from the defense until the last minute, and even when process servers have been able to locate them (at an address the State continues to withhold from the defense) they simply refused service. Their lawyer asked the defense to call off the process servers, while at the same time refusing to accept service on their behalf.

There is a reason why the State is hiding these accusers from the stand. The defense has relevant questions to ask them for this hearing, and the State's conduct should not be rewarded.

SIGNATURE PAGE FOLLOWS

11

Dated: July 15, 2026                    **PACYGA TRIAL LAWYERS**

By:    /s/ Ryan M. Pacyga
        Ryan M. Pacyga (#321576)
        860 Blue Gentian Road, Suite 175
        St. Paul, MN 55121
        (612) 339-5844
        *Attorney for Gregory Morgan*

12