**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **STATE OF MINNESOTA,** | |
| **v.** | **No. 26-CR-112 (NEB)** |
| **GREGORY DONNELL MORGAN, JR.,** | |
| *Defendant.* | |

**STATE OF MINNESOTA'S MOTION REQUESTING USE IMMUNITY**

The State of Minnesota ("State") respectfully moves this Court to grant use immunity for victim-witnesses T.B. and B.A.

The federal government's Statement of Interest—filed by lawyers at the Department of Justice's Civil Division—suggested that the victims in this case could face potential criminal liability for their actions under 18 U.S.C. § 111. The State disputes this characterization of events, and the Statement of Interest's assertion that the victim-witnesses may have violated Section 111 is matched by no corresponding investigation or prosecution by the Department of Justice's Criminal Division or the U.S. Attorney's Office for the District of Minnesota. The victims have nevertheless indicated they intend to invoke their Fifth Amendment rights against self-incrimination, should they be called to testify in the removal proceedings.

The State requested that the U.S. Attorney remove any doubt about the victims' liability by providing them use immunity under 18 U.S.C. § 6003, which would provide a simple and efficient route to permitting their testimony, should the Court deem their testimony warranted at the removal hearing. On August 3, 2026, the U.S. Attorney declined the State's request, citing "procedural and substantive requirements of the statute." The State would normally have the power to request such immunity in its own courts. Under *Arizona v. Manypenny*, 451 U.S. 232

(1981), it is a well-settled principle of federal law that removal should not diminish a state's rights. Indeed, it would be an unsettling result if a state could not exercise its core sovereign prerogative to provide use immunity in a criminal proceeding—and a prosecution could potentially be hamstrung—simply because the case was removed to federal court. The Court should therefore grant the requested use immunity.[1]

## I.      BACKGROUND

On February 5, 2026, defendant Gregory Morgan was driving a rented black vehicle illegally along the shoulder of a Minnesota state highway, bypassing a line of cars queuing as that highway merged with another. ECF No. 8, at 1, 3. The defendant was employed as an agent with U.S. Immigration and Customs Enforcement ("ICE"). *Id*. at 1. But the defendant's car had no markings identifying it as connected to any law enforcement agency. *Id*. Another motorist, who was unaware that the unmarked vehicle was driven by an ICE agent, moved partially onto the shoulder to slow down and block the defendant from cutting in line. *Id*. at 1, 3-4. After the motorist merged back into the queue, the defendant pulled alongside, rolled down his window, and pointed a gun at the motorist and the motorist's front-seat passenger (collectively "victim-witnesses," and individually "T.B." and "A.B."). *Id*. at 1, 4.

---

[1] The Court can promptly grant the State's motion, as the defendant lacks standing to challenge a prosecutor's "broad discretion in its grants of immunity" to witnesses. *United States v. Washington*, 318 F.3d 845, 855 (8th Cir. 2003); *cf. United States v. Harding*, 864 F.3d 961, 964-65 (8th Cir. 2017) (defendant lacks standing to challenge district court's decisions refusing to appoint counsel for prosecution witnesses or to advise witnesses of their Fifth Amendment privilege against self-incrimination because that privilege belongs to the witness, not the defendant); *accord Minnesota v. Rice*, 411 N.W.2d 260, 262 (Minn. 1987) (identifying the "general rule" that "a defendant does not have standing to contest the grant of immunity to a witness who testifies against him"). In any event, the defendant would have no reason to oppose such immunity in this case given that he is seeking the victim-witnesses' testimony at the upcoming removal hearing.

The State charged the defendant under Minnesota law for assaulting T.B. and A.B. *Id*. at 6. The defendant has sought to remove this criminal case to federal court and sought an evidentiary hearing, ECF No. 1, and has further indicated that he plans to call both victim-witnesses to testify at that hearing. The United States, through the U.S. Department of Justice's Civil Division, filed a Statement of Interest in the removal action in which it repeatedly accused at least one victim-witness of violating 18 U.S.C. § 111. *See* ECF No. 26 at 11, 12, 13, 15, 25. In response, both victim-witnesses have indicated that they intend to invoke their Fifth Amendment privilege against self-incrimination if called to testify. *See* ECF No. 35 (letter from counsel for the witnesses).

The State asked the United States Attorney for the District of Minnesota to seek use immunity orders under 18 U.S.C. § 6003 for both victim-witnesses—whose testimony the defendant (but not the State) seeks at the upcoming removal hearing. ECF No. 43. The State disagrees with the Civil Division's assertions regarding criminal culpability on the part of the victim-witnesses; indeed, those allegations appear designed to intimidate the victim-witnesses and frustrate these proceedings. The receipt of use immunity, however, would appear to remove the victim-witnesses' concerns and permit them to testify. *See generally Kastigar v. United States*, 406 U.S. 441, 462 (1972) (use and derivative-use immunity "is coextensive with the [Fifth Amendment] privilege and suffices to supplant it.").

On August 3, 2026, the U.S. Attorney formally declined the State's request in a brief email. The email cited only "procedural and substantive requirements of the statute" and provided no other explanation. In its prior filing, the State noted that, if the U.S. Attorney declined to grant immunity itself, the State intended to pursue alternative relief to ensure that the victim-witnesses could testify without fear that their testimony would later be used against them in a federal

3

prosecution. ECF No. 43. This motion identifies the legal basis for such relief and requests this Court to grant use immunity to the victim-witnesses.

## II.    ARGUMENT

Under the Supreme Court's decision in *Arizona v. Manypenny*, 451 U.S. 232 (1981), a defendant's petition to remove a case under 28 U.S.C. § 1442 does not deprive the State of the ordinary incidents of its prosecutorial authority—including the right to compel testimony through a grant of use immunity. Three distinct legal avenues permit the Court, consistent with *Manypenny*, to provide use immunity for the victim-witnesses upon the State's request in this case. *First*, the simplest route is for the Court to apply Minnesota's immunity statute, Minn. Stat. 609.09, which empowers the State to request use immunity and applies in a removed action under *Manypenny*. *Second*, *Manypenny* also directs the Court to construe the federal immunity statutes, 18 U.S.C. §§ 6001-03, to permit the State, standing in the position of the prosecuting sovereign in federal court, to invoke the procedures ordinarily available in federal criminal cases and to request use immunity. *Third*, consistent with *Manypenny*, the Court may exercise its inherent authority to fashion equivalent relief to preserve the State's essential sovereign police power to prosecute violations of state criminal law and to immunize witnesses.[2]

---

[2] To be clear, the State is principally interested in securing the victim-witnesses' testimony at trial, although the Court may now have to confront the immunity issue given the defendant's interest in that testimony for purposes of the removal hearing. The defendant's claims (ECF No. 30 at 46; ECF No. 35 at 1) that he has a constitutional right to compel the victim-witnesses' testimony at a removal hearing is wrong. For purposes of this removal hearing, he is not a criminal defendant putting on a defense—though even if he were, he could not, as noted below, compel their testimony at trial by asking the Court to grant judicial use immunity. He is simply petitioning this Court to assume subject-matter jurisdiction over a state court prosecution, for which he as the defendant bears the burden of establishing that removal is appropriate. *See* ECF No. 29 at 2. The defendant will certainly receive (and, in state court in Minnesota, has thus far received) the full panoply of constitutional rights and protections that appropriately apply to a criminal defendant when this prosecution proceeds. But neither the removal statutes' text, structure, and purpose, nor any legal

### A. Use Immunity Under Minn. Stat. 609.09

The most straightforward route to providing use immunity is for this Court to apply Minnesota's use-immunity statute, Minn. Stat. § 609.09. Section 609.09 permits a court to grant use immunity upon the state prosecutor's request where "it appears a person may be entitled to refuse to answer a question or produce evidence of any other kind on the ground that the person may be incriminated thereby" and the judge finds that an order directing the person to answer "would not be contrary to the public interest and would not be likely to expose the witness to prosecution in another state or in the federal courts." *Id.* Subd. 1. Both criteria are readily met here. The victim-witnesses have, through counsel, indicated their intention to refuse to answer questions, ECF No. 35, and a use immunity order is in the public interest, as is reflected in the fact that both the State and the defendant seek their testimony.

In criminal proceedings in Minnesota state courts, prosecuting attorneys thus unquestionably possess statutory authority to apply for use immunity under Minn. Stat. § 609.09. The question presented here, therefore, is not whether Minnesota has that authority. It plainly does. Rather, the question is whether the defendant's unilateral decision to seek removal of the State's prosecution to federal court, which triggered a statutorily required removal hearing, extinguished the State's authority merely because the forum changed.

The Supreme Court's decision in *Manypenny* supplies the answer. There, a federal Border Patrol officer removed a state criminal prosecution to federal court under the federal officer removal statute. After the district court entered a judgment of acquittal following a guilty verdict before a jury, Arizona sought to exercise its right under state law to appeal that judgment. The

---

authority the defendant has provided, suggests those rights and protections apply equally at a removal hearing.

question before the Supreme Court was whether the Border Patrol officer-defendant's removal of the state prosecution to federal court "alter[ed] the nature of the State's otherwise well-established right, under state law," to obtain appellate review. *Manypenny*, 451 U.S. at 242.  The Court did not ask whether *federal law* affirmatively granted Arizona a right to appeal.  Instead, it began with the premise that Arizona already possessed that authority as an incident of its prosecution under Arizona criminal law and asked whether removal divested the State of that authority—ultimately concluding that removal did not have that consequence.

In doing so, the Court explained that removal under Section 1442 only provides a federal forum for adjudication; it does not transform the prosecution into a federal criminal case, substitute the United States as the prosecuting sovereign, or, most importantly, diminish the prosecutorial powers that state law confers.  To the contrary, the Court decided that "[i]t would be anomalous to conclude that the State's appellate rights were diminished solely because of the removal. The statutory goal of ensuring fair and impartial adjudication is not advanced when the State in effect can be penalized by the defendant's decision to remove a criminal prosecution."  *Id.* at 246.  Indeed, *Manypenny* stressed that the Supreme Court affords the "highest regard for a State's right to make and enforce its own criminal laws." *Id*. at 243.  Accordingly, *Manypenny* establishes the fundamental principle that federal provisions allowing for removal in certain cases do not diminish the prosecutorial authority the state otherwise possesses under its own law.

Lower courts applying *Manypenny* have recognized that removal does not diminish rights conferred by state law.  As the Tenth Circuit has explained, "[u]nder *Manypenny*, the federal courts are obligated to observe rights provided to parties under state law." *City of Aurora v. Erwin*, 706 F.2d 295, 299 (10th Cir. 1983) (preserving Colorado's right to a jury trial in a petty offense case that was removed to federal court); *see also, e.g.*, *Arizona. v. Elmer*, 21 F.3d 331, 333 n.1 (9th Cir.

6

1994) (applying *Manypenny* to permit state's appeal of suppression order as authorized under Arizona law); *New Jersey v. Kinder*, 701 F. Supp. 486, 489 (D.N.J. 1988) (under the rationale in *Manypenny*, applying state law permitting private attorney to prosecute a criminal case, and explaining that "it would be anomalous to conclude that the state's right to prosecute the defendant through the use of a private attorney was diminished solely because of removal").

This central principle from *Manypenny* extends to the conferral of use immunity in these proceedings under Minn. Stat. § 609.09.  The authority to compel testimony through a grant of immunity is among the sovereign's most fundamental prosecutorial powers.  As the Supreme Court has explained, "[t]he power of government to compel persons to testify" is deeply rooted in Anglo-American jurisprudence because "[t]he public has a right to every man's evidence." *Kastigar v. United States*, 406 U.S. 441, 443-44 (1972).  When the State initiated this prosecution in Minnesota district court, it possessed the authority to apply for an order compelling testimony by conferring immunity under Minn. Stat. § 609.09.  That authority survives intact, and no "purpose of the removal statute would be served by denying the State a right to seek [use immunity] when that very right is available under applicable state law." *Manypenny*, 451 U.S. at 243 ("[T]his Court retains the highest regard for a State's right to make and enforce its own criminal laws.").

Indeed, applying Minn. Stat. § 609.09 in this removal proceeding is analogous to how the Supreme Court in *Manypenny* permitted Arizona to appeal an adverse judgment under state law. Because this remains a state criminal prosecution—not a federal criminal prosecution—this Court has the authority to give effect to the immunity authority that Minnesota law confers upon the State for all offenses committed under Minnesota law.  Doing anything less would undermine the "State's right to make and enforce its own criminal laws." *Manypenny*, 451 U.S. at 243.

Applying Minn. Stat. § 609.09 to immunize the witnesses for any potential offenses under state law would not leave the witnesses exposed to use of their compelled testimony in subsequent federal proceedings for potential federal offenses. Rather, under well-established precedent, testimony compelled pursuant to a *state* grant of immunity may not thereafter be used against the witness in a *federal* criminal prosecution, including the meritless prosecution under Section 111 seemingly threatened in the Civil Division's Statement of Interest. *See Murphy v. Waterfront Comm'n*, 378 U.S. 52, 77-78 (1964); *see also United States v. McDaniel*, 449 F.2d 832, 837 (8th Cir. 1971) ("[T]he failure of the Federal prosecution here arises not because McDaniel was granted immunity under state law, but because the Federal Government took advantage of this immunity to gain access to his testimony."). Thus, application of Minn. Stat. § 609.09 would provide the witnesses with constitutionally sufficient protection against any future federal use of their testimony while preserving the State's ability to present evidence in this prosecution.

**B. Use Immunity Through 18 U.S.C. §§ 6001-03**

If the Court concludes that the Minnesota statute cannot itself be applied in these proceedings, then *Manypenny* directs the Court to identify the federal procedural analogue through which the State's preserved authority may be exercised. In particular, the Court should construe the federal immunity statutes, 18 U.S.C. §§ 6001-03, to permit the State, standing in the position of the prosecuting sovereign here, to invoke the same procedures ordinarily available to the United States in federal criminal prosecutions.

That construction follows naturally from *Manypenny*, in which the Court declined to read the federal final judgment statute, 28 U.S.C. § 1291, to foreclose the state's appeal from a final judgment. As the Court explained, there is "no basis for concluding that Congress' neglect specifically to authorize a state appeal in a removed criminal proceeding impairs the appellate

rights of the state prosecutor acting to enforce his separate body of criminal law." *Manypenny*, 451 U.S. at 249.

A similar logic applies in this case. Congress drafted the immunity statutes to govern ordinary federal criminal prosecutions, where the United States is necessarily the prosecuting sovereign. The Court should thus decline to read into "Congress' neglect specifically to authorize a state" to invoke Section 6003 in context of removal a prohibition on the State seeking use immunity in a state prosecution that is or may be removed to federal court. Indeed, nothing in the federal immunity statutes' text or history suggests that Congress even considered the unusual circumstance presented by Section 1442, where state prosecutors pursuing a state criminal case must proceed in federal court under the federal officer removal provision.

Moreover, federal provisions governing prosecutorial functions are necessarily drafted on the assumption that the United States is ordinarily the prosecuting sovereign. Yet federal procedural rules indisputably govern removed state prosecutions notwithstanding that premise. *See Manypenny*, 451 U.S. at 251 (noting that, for state prosecutions removed to federal court, "the federal court conducts the trial under federal rules of procedure"). The question is therefore not whether Congress expressly referred to state prosecutors in every procedural provision, but whether those provisions should be applied functionally where necessary in the atypical context of a removed state prosecution. *Manypenny* answers that question in the affirmative by requiring that the Court not construe the statute in a way in which removal would diminish the State's prosecutorial authority. *Cf. id*. at 249 ("Requiring Congress also to address explicitly the State's authority contributes nothing to the policy concerns that prompt the requirement of express sovereign action.")

9

In contrast, reading Sections 6001-03 literally in this context would produce the very incongruity *Manypenny* aims to prevent.   If Minnesota's immunity statute were unavailable in a federal court removal hearing, while the federal immunity statutes were unavailable because the prosecutor is not a United States Attorney, the defendant's attempt to remove the case would leave no sovereign able to confer immunity sufficient to compel testimony.   The result would be to deprive the State of an indispensable prosecutorial authority it possessed before the notice of removal was filed.   *Manypenny* rejects precisely that result.

### C.  Use Immunity As An Exercise of The Court's Inherent Supervisory Authority

Finally, if the Court were to conclude that neither Minn. Stat. § 609.09 nor 18 U.S.C. §§ 6001-03 provides a mechanism for conferring immunity in this unusual procedural posture, the Court could exercise its inherent supervisory authority to fashion relief sufficient to protect the witnesses' Fifth Amendment rights while preserving the integrity of these proceedings.

The Supreme Court has held that federal courts have "inherent" "equitable powers . . . to prevent abuse, oppression, and injustice." *Gumbel v. Pitkin*, 124 U.S. 131, 145-46 (1888).  "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs. . . .'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).  A federal court may exercise these "supervisory powers" to craft remedies that (1) correct the violation of recognized rights; (2) preserve judicial integrity; and (3) deter illegal conduct. *United States v. Hasting*, 461 U.S. 499, 505 (1983).

Courts often use their inherent supervisory powers to ensure fair trials.  In criminal cases, for example, courts can limit or exclude the introduction of certain evidence when the government does not timely disclose it, *United States v. Sims*, 776 F.3d 583, 585-86 (8th Cir. 2015); exclude people from the courtroom for witness safety, *see United States v. Thompson*, 713 F.3d 388, 396

(8th Cir. 2013); dismiss an indictment because the government failed to timely turn over crucial evidence to the defense, *United States v. Bundy*, 968 F.3d 1019, 1023 (9th Cir. 2020); and dismiss an indictment when a defendant was vindictively or selectively prosecuted, *United States v. Abrego Garcia*, No. 25-CR-00115, 2026 WL 1454303, at *12 (M.D. Tenn. May 22, 2026). These remedies, among others, maintain the fairness and integrity of the judicial process.

Here, the Court is confronted with the highly unusual circumstance of a state criminal prosecution in which the prosecuting sovereign indisputably possesses authority to compel testimony in the proceeding it filed. Meanwhile, the federal government's Civil Division has recently, and baselessly, asserted that the victim-witnesses may have committed the crime of assaulting a federal law enforcement officer with a dangerous weapon, potentially subjecting them to a 20-year maximum penalty under 18 U.S.C. § 111. ECF No. 26, at 13-14. The theory outlined in the Civil Division's Statement of Interest is particularly farfetched in light of the lack of any criminal investigation into the victims by federal prosecuting authorities, or indeed any reference to such criminal liability prior to filing the Statement of Interest.[3] Whether intentional or not, that assertion functions to frustrate these proceedings by intimidating the victim-witnesses. It also gives rise to precisely the circumstances in which this Court should exercise its supervisory powers.

To be sure, federal courts generally cannot utilize this inherent authority to immunize witnesses at the request of *a defendant* because doing so "would violate established principles of separation of powers by infringing on a power reserved to the executive branch." *United States v.*

---

[3] Nor did the defendant attempt to arrest the victim-witnesses or take any steps to initiate a prosecution. When interviewed by a Minnesota State Trooper, the defendant did not suggest that he had probable cause to make an arrest for an assault against him. ECF No. 29-2, Ex. B, at 1-14. Nor did the other agent in the vehicle with the defendant. *Id.* at 15-28. Neither of them wrote an incident report regarding the incident. *Id.* at 23-24.

11

*Alexander*, 735 F. Supp. 923, 925 (D. Minn. 1990); *see United States v. Bowling*, 239 F.3d 973, 976 (8th Cir. 2001).[4]  But here, the request does not come from a defendant.  Instead, it comes from a sovereign state that could have unquestionability provided use immunity under Minnesota law, were this proceeding to occur in State court.  And it comes in the context of the United States engaging in conduct that threatens to "distort the judicial fact-finding process" by compelling the victim-witnesses to assert their Fifth Amendment rights, depriving the State of its ability to proceed with this prosecution. *United States v. Campbell*, 410 F.3d 456, 463 (8th Cir. 2005).  This is an impermissible federal intrusion into a state's police power. "Because the regulation of crime is preeminently a matter for the States," the Supreme Court has "identified 'a strong judicial policy against federal interference with state criminal proceedings'" and held that "a State's interest in enforcing its criminal laws merits comparable judicial respect when pursued in the federal courts." *Manypenny*, 451 U.S. at 243 (internal quotations and citations omitted).

Thus, far from undermining the separation of powers, should this Court determine that it cannot provide immunity via Minn. Stat. § 609.09 or 18 U.S.C. §§ 6001-03, providing use immunity instead through this Court's inherent supervisory authority would fall squarely within "the strong tradition of deferring to prosecutorial discretion." *Washington*, 318 F.3d at 855.

## III.  CONCLUSION

In these circumstances, the Court should enter an order conferring use immunity coextensive with the Fifth Amendment privilege.  The most direct route to do so would be to apply

---

[4] The rationale for rejecting judicial use immunity for defense witnesses does not apply here. Because it is the State, as the prosecutor, that requests immunity for its witnesses, this Court can grant judicial use immunity without "infringing on a power reserved to the executive branch." *Alexander*, 735 F. Supp. at 925 (D. Minn. 1990).  And because the State is prosecuting the case, this Court would not be deviating from "the strong tradition of deferring to prosecutorial discretion" if it grants immunity to the State's witnesses. *United States v. Washington*, 318 F.3d 845, 855 (8th Cir. 2003).

Minn. Stat. § 609.09.  The Court could alternatively construe 18 U.S.C. §§ 6001-03 to apply to the State in removed cases or exercise its inherent authority to issue an order providing the victim-witnesses with use immunity.  Such an order would preserve the constitutional rights of the witnesses while ensuring that the defendant's attempt to remove the state prosecution does not deprive the State of an essential incident of its prosecutorial authority.

Dated: August 4, 2026

Respectfully Submitted,

MARY F. MORIARTY
Hennepin County Attorney

/s/ *Morgan D. Kunz*
MORGAN D. KUNZ
JOSHUA R. LARSON
HENNEPIN COUNTY ATTORNEY'S OFFICE
300 S. 6th St.
Minneapolis, MN 55487
(612) 348-5550
Morgan.Kunz@hennepin.us

/s/ *Julia Gegenheimer*
JULIA GEGENHEIMER* (D.C. Bar No. 90034692)
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
    AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 661-6539
jg1370@georgetown.edu

/s/ *James I. Pearce*
JAMES I. PEARCE* (D.C. Bar No. 90042280)
WASHINGTON LITIGATION GROUP
1717 K Street NW
Washington, DC 20006
(202) 521-8750
jpearce@washingtonlitigationgroup.org

13

*Counsel for State of Minnesota*

*\* Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2026, a true and accurate copy of the State of Minnesota's Motion Requesting Use Immunity was filed electronically with the Court's CM/ECF filing system, which will then send notification of such filing to the parties, including:

RYAN M. PACYGA
Ryan Pacyga Criminal Defense
860 Blue Gentian Road
Suite 175
Eagan, MN 55121
612-339-5844
ryan@arrestedmn.com

      *Attorney for Defendant*

This 4th day of August, 2026.

      /s/ *James I. Pearce*
      JAMES I. PEARCE* (D.C. Bar No. 90042280)
      WASHINGTON LITIGATION GROUP
      1717 K Street NW
      Washington, DC 20006
      (202) 521-8750
      jpearce@washingtonlitigationgroup.org

* *Admitted pro hac vice*